686 N.W.2d 491 (2004)
262 Mich.App. 434
Russell L. NEWTON III, Plaintiff-Appellant,
v.
Bank WEST, formerly known as Bank West, FSB, Defendant-Appellee.
Docket No. 228903.
Court of Appeals of Michigan.
Submitted May 5, 2004, at Grand Rapids.
Decided June 15, 2004, at 9:15 a.m.
Released for Publication September 1, 2004.
Drew, Cooper & Anding (by John E. Anding and Christopher G. Hastings) and *492 Phillip C. Rogers, Grand Rapids, for the plaintiff.
Bodman, Longley & Dahling, LLP (by James J. Walsh and George G. Kemsley), Ann Arbor, for the defendant.
Before: GAGE, P.J., and O'CONNELL and ZAHRA, JJ.
GAGE, J.
Plaintiff, Russell L. Newton III, appeals by leave granted from an order summarily dismissing his claims against defendant, Bank West, which claims were based on defendant's practice of charging a document preparation fee in residential real estate mortgage loan transactions. We affirm.
Plaintiff's complaint was filed on behalf of himself and a class of similarly situated individuals who obtained residential real estate loans from defendant in the six-year period before the date of the filing of the complaint. Plaintiff alleged that he was charged a $250 document preparation fee, that the fee was improperly disclosed on his HUD-1 settlement statement,[1] that the fee exceeded the cost necessary to prepare the note and mortgage in conjunction with the loan transaction, that the fee was assessed for items other than mere document preparation, and that the latter fact was not disclosed. Plaintiff alleged that the act of charging the excessive fee and improperly disclosing it constituted the unauthorized practice of law, violated the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq., and violated common law. The trial court granted summary disposition in favor of defendant on all plaintiff's claims pursuant to MCR 2.116(C)(8). It ruled that the MCPA claim was not viable on the basis of Smith v. Globe Life Ins. Co., 460 Mich. 446, 597 N.W.2d 28 (1999). It further ruled that the remaining claims, which were based on the unauthorized practice of law, were not viable because the preparation of loan documents did not constitute the unauthorized practice of law.
After leave to appeal was granted by this Court, the appeal was held in abeyance pending our Supreme Court's decision in Dressel v. Ameribank, 468 Mich. 557, 664 N.W.2d 151 (2003). In Dressel, the Supreme Court held that a bank does not engage in the unauthorized practice of law when it completes standard mortgage forms and charges a fee for the service. Id. at 569, 664 N.W.2d 151. The first two issues raised by plaintiff in his appeal were subsequently dismissed by order of this Court.[2] The only remaining issue before this Court is whether the MCPA applies to the residential mortgage loans made by *493 defendant. We find that it does not, and we affirm the trial court's grant of summary disposition in favor of defendant.
We review de novo a trial court's ruling on a motion for summary disposition. Kraft v. Detroit Entertainment, LLC, 261 Mich.App. 534, 539, 683 N.W.2d 200 (2004). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone. Alan Custom Homes, Inc. v. Krol, 256 Mich.App. 505, 507-508, 667 N.W.2d 379 (2003). Whether the MCPA applies to the residential mortgage loans made by defendant raises an issue of statutory interpretation, which is an issue of law that is reviewed de novo. Kraft, supra at 539-540, 683 N.W.2d 200.
The MCPA is a remedial statutory scheme designed "to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals." Forton v. Laszar, 239 Mich.App. 711, 715, 609 N.W.2d 850 (2000). By its express language, however, the MCPA exempts from itself "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a).[3]
In Smith, the Court interpreted the phrase "specifically authorized" as used in § 4(1)(a). The plaintiff filed suit alleging breach of contract and violations of the MCPA after the defendant insurer refused to pay insurance benefits. Smith, supra at 448-449, 597 N.W.2d 28. The trial court determined that the MCPA did not apply to activity regulated by the State Commissioner of Insurance (now Office of Financial and Insurance Services). Id. at 452-453, 597 N.W.2d 28. This Court reversed, ruling that a "common-sense reading" of § 4(1)(a) revealed that the Legislature did not intend to exempt illegal conduct from the MCPA. Smith v. Globe Life Ins. Co., 223 Mich.App. 264, 281, 565 N.W.2d 877 (1997). The Supreme Court rejected this Court's interpretation:
[W]hen the Legislature said that transactions or conduct "specifically authorized" by law are exempt from the MCPA, it intended to include conduct the legality of which is in dispute. Contrary to the "common-sense reading" of this provision by the Court of Appeals, we conclude that the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited. [Smith, 460 Mich. at 465, 597 N.W.2d 28 (emphasis added).]
See also Kraft, supra at 541, 683 N.W.2d 200.
Applying the standard established by the Supreme Court in Smith, we conclude that the residential mortgage loan transactions fit squarely within the exemption. It is undisputed that, before September 30, 1997, defendant was a federal savings bank and that, after September 30, 1997, defendant operated under the Michigan Savings Bank Act, MCL 487.3101 et seq. A federal savings bank is specifically authorized to make residential mortgage loans under laws administered by a regulatory board or officer acting under statutory authority of the United States. Specifically, 12 USC 1464(c)(1)(B) provides that federal savings banks are authorized to "invest in, sell, or otherwise deal in ... [r]esidential real property loans." Federal savings banks are regulated by the Office *494 of Thrift Supervision, which is an office in the Department of Treasury. 12 USC 1462a(a). The Director of the Office of Thrift Supervision oversees the organization, incorporation, examination, operation, and regulation of federal savings associations, including federal savings banks. 12 USC 1464(a)(1); 12 USC 1463(a). The director has authority to enforce 12 USC 1464, under which residential real property loans are authorized, and to enforce regulations imposed under that statute. 12 USC 1464(d). The director may also prescribe regulations and issue orders necessary to implement the Home Owners' Loan Act, 12 USC 1461 et seq., and other laws within the director's jurisdiction. 12 USC 1462a(b)(2). Additionally, the Real Estate Settlement Procedures Act (RESPA), 12 USC 2601 et seq., contains numerous regulations applicable to residential mortgage loan transactions.[4] The Secretary of Housing and Urban Development is authorized to establish rules and regulations to achieve the purposes of the RESPA. 12 USC 2617(a). He may "investigate any facts, conditions, practices, or matters that may be deemed necessary or proper to aid in the enforcement of the provisions of [RESPA.]" 12 USC 2617(c)(1). It is abundantly clear, on the basis of a mere overview of applicable law, that federal savings banks making residential mortgage loans are engaged in transactions specifically authorized under laws administered by a regulatory board or officers acting under United States statutes.
Similarly, under the state Savings Bank Act, the residential mortgage loan transactions at issue are specifically authorized. MCL 487.3401(v) provides that a savings bank may "make, sell, purchase, arrange, participate in, invest in, or otherwise deal in loans or extensions of credit for consumer purposes," including secured liens in real estate. Savings banks are subject to examination by the Commissioner of the Office of Financial and Insurance Services concerning conditions and affairs of the bank. MCL 487.3209. The commissioner may hold hearings if a bank is engaging in unsafe or unsound practices in conducting the business of that bank or is violating rules or laws. MCL 487.3215(1). If the commissioner finds that an unsafe or unsound practice, or charged violation, is established, he may issue and serve a cease and desist order and require affirmative action to correct the conditions resulting from the practice or violation. MCL 487.3215(3). The commissioner has additional supervisory powers over savings banks. For example, he may suspend a director or officer of a savings bank under certain circumstances. MCL 487.3217. Further, the RESPA applies to the residential real estate loans provided by the state's savings banks. See MCL 487.3203; 12 USC 2602(1). As previously noted, the Secretary of Housing and Urban Development has the authority to investigate facts, conditions, practices, or matters that may be deemed necessary or proper to aid in the enforcement of the RESPA. 12 USC 2617(c). Thus, we conclude that state savings banks making residential mortgage loans are engaged in transactions "specifically authorized" under laws administered by officers acting under both state and federal statutes.
We find no merit in plaintiff's argument that the language of MCL 445.917 and MCL 445.903(1)(o) conclusively establish *495 that the MCPA applies to real estate mortgage loans made by banks. MCL 445.917 gives the Commissioner of the Financial Institutions Bureau (now the Office of Financial and Insurance Services) jurisdiction concurrent with the Attorney General to take action against a state or federally chartered bank that engages in unlawful acts under the MCPA. While this provision undoubtedly expresses an intent by the Legislature to allow the investigation of banks for violating the MCPA, banks engage in a host of transactions unrelated to the making of residential mortgage loans. We decline to engage in a sweeping review of all of the possibilities in which the MCPA may apply to banks, and we emphasize that, by our decision in this case, we are not ruling that the banking industry as a whole is exempt from the provisions of the MCPA. Rather, we find that the specifically authorized mortgage loan transactions are exempt.
MCL 445.903(1)(o) prohibits the causing of a probability of confusion or misunderstanding of terms or conditions of credit if credit is extended in a transaction. This provision also expresses an intent by the Legislature to generally include credit transactions within the purview of the MCPA. This language, however, does not require a finding that the exemption of § 4(1)(a) is inapplicable to mortgage loan transactions. The extension of credit is not always "specifically authorized" under laws administered by regulatory boards or officers acting under laws of this state or the United States. For example, in Attorney General v. Diamond Mortgage Co., 414 Mich. 603, 327 N.W.2d 805 (1982), the defendant real estate broker offered loans to homeowners. This conduct was not "specifically authorized" under the defendant's real estate broker's license. Id. at 617, 327 N.W.2d 805.
Finally, we are not persuaded by defendant's argument that all businesses are regulated and, thus, the MCPA has no meaning if this Court exempts regulated businesses from the MCPA. We do not hold that regulated businesses are exempt from the MCPA. The focus of our inquiry is whether particular transactions are "specifically authorized" under laws administered by regulatory boards or officers acting under laws of this state or the United States. Smith, supra; Kraft, supra. Under the facts of this case, the MCPA claims fail as a matter of law because the residential mortgage loan transactions are exempt.[5]
Affirmed.
NOTES
[1] The HUD-1 statement is a standard real estate closing document promulgated by the Department of Housing and Urban Development (HUD).
[2] In his statement of the questions presented, plaintiff raised the issue whether a nonlawyer engages in the unauthorized practice of law when it prepares legal documents and charges a fee for doing so. He also raised a separate issue whether a mortgage lender is specifically authorized by law to charge a fee for preparation of legal documents such as a note and mortgage. In arguing the second issue, plaintiff challenged the trial court's alternative rationale for finding that the bank properly charged a fee for the preparation of legal documents. Plaintiff's argument is cursory, and, while he argues that the trial court's ruling was without merit, he fails to rationalize or explain this position. He also fails to cite relevant authority to support that the trial court's ruling was devoid of merit. Thus, even if this issue could properly be considered apart from the issue of the unauthorized practice of law, the issue is abandoned. Houghton v. Keller, 256 Mich.App. 336, 339-340, 662 N.W.2d 854 (2003) ("An appellant's failure to properly address the merits of an assertion of error constitutes abandonment of the issue.").
[3] Certain exceptions to the exemption are set forth in MCL 445.904(2). Smith, supra at 449, 597 N.W.2d 28. The exceptions outlined in § 4(2) are not at issue in this case.
[4] The RESPA applies to federally related mortgage loans, which include loans secured by a first or subordinate lien on residential real property designed principally for the occupancy of one to four families if the loans are made in whole or part by a lender whose accounts are insured by an agency of the federal government or by a lender regulated by an agency of the federal government. 12 USC 2602(1).
[5] In reaching our conclusion, we acknowledge plaintiff's reference to MCL 438.31a when arguing that the mortgage transactions were not specifically authorized. Other than citing the statute and its contents, however, plaintiff provides no explanation or argument to explain the effect of this provision on the issues in this case. We are not required to discover and rationalize plaintiff's position, and we decline to do so. Houghton, supra.