COWLES v BANK WEST

Docket No. 229516. Submitted May 5, 2004, at Grand Rapids. Decided
     August 5, 2004, at 9:05 A.M.

     Kristine Cowles brought a class action in the Kent Circuit Court
     against Bank West, alleging that the defendant engaged in the
     unauthorized practice of law when it prepared residential loan
     documents for a fee. The plaintiff's first amended complaint added
     a claim alleging that the document preparation fee violated the
     Truth In Lending Act (TILA), 15 USC 1638. The court, Donald A.
     Johnston, J., granted summary disposition for the defendant on
     the plaintiff's TILA claim. The plaintiff then filed a second amended
     complaint alleging another TILA claim. The court certified the class
     and made the plaintiff class representative. Defendant filed a
     motion for reconsideration on the new TILA claim on the basis that
     it was barred by the applicable statute of limitations, and it also
     sought summary disposition on the merits of the TILA claim. Before
     the court ruled on the motions, Karen B. Paxson, a member of the
     class, was allowed to intervene and act as class representative for
     the TILA claim. The court then granted the defendant's motion for
     reconsideration, ruling that the limitations period had run on
     plaintiff Cowles's TILA claim, and it granted summary disposition
     on all of the plaintiffs' other claims except plaintiff Paxson's TILA
     claim. Defendant and plaintiff Paxson separately moved for sum-
     mary disposition on the TILA claim. The court held that the period
     of limitations had expired on Paxson's TILA claim because the claim
     accrued more than one year before plaintiff Cowles pleaded it in
     her second amended complaint, and that complaint did not relate
     back to the original pleading filed by the plaintiff Cowles. Plain-
     tiffs' application for leave to appeal was granted by the Court of
     Appeals but held in abeyance pending the Supreme Court's
     decision in *Dressel v Ameribank*, 468 Mich 557 (2003). The ruling
     in that case resolved the plaintiffs' unauthorized practice of law
     claim, which the Court of Appeals then dismissed.

     The Court of Appeals *held*:

     1. Residential mortgage loan transactions are exempt from the
     Michigan Consumer Protection Act. MCL 445.904(1)(a).

2. MCR 3.501(F)(1) provides that the statute of limitations is tolled for all persons within the described class on the commencement of the class action. Plaintiff Paxson was a member of the class described in the original complaint filed by plaintiff Cowles. Therefore, the statute of limitations was tolled with respect to plaintiff Paxson.

3. Reference must be made to the general, civil rules of procedure to answer the question whether, in a class action, the second amended complaint filed by plaintiff Cowles relates back to the original pleading that tolled the statute of limitations. MCR 2.118(D) and precedent allow for an amended pleading that raises new facts and claims based on the same conduct to relate back to the original pleading and not be barred by the applicable statute of limitations. The defendant is not prejudiced by this result because the class is certified, the statute of limitations continues to be tolled for all persons within the class described in the original complaint, the initial pleading notified defendant that the document preparation fee and the manner of disclosure were the subject of the suit, and the defendant was given notice of the size of the prospective class as described in the original complaint. This result also prevents the negation of the efficiency for which class action litigation was designed because class members, for whom the period of limitations may expire while a motion to amend to add a new claim is pending, will not be forced to protect their rights by intervening individually or filing separate actions to maintain their claims in the event that amendment is denied or is ordered after the period of limitations expires on their individual claims. Moreover, this result does not disadvantage class action defendants because no new class action members will be added nor would they benefit from the relation-back doctrine.

4. Plaintiff Paxson's TILA claim is not barred by the statute of limitations because Cowles's second amended complaint, which raised the TILA claim, relates back to the original pleading filed by Cowles where, within the statutory limitations period on Paxson's individual claim, the defendant was put on notice by Cowles's original complaint that class members were seeking damages related to the payment of the document preparation fee, and the claims asserted in the original and second amended complaints arose from the same transactional setting.

5. The statute of limitations on the TILA claims was tolled even though plaintiff Cowles's limitations period had expired on her TILA claim. Although Cowles could not serve as class representative on the TILA claims, there are other plaintiffs like Paxson who are described in the certified class and have valid TILA claims and the

court is allowed to permit any appropriate class member to substitute as class representative.

6. Summary disposition on the merits of plaintiff Paxson's TILA claim was improper. The TILA claim, 15 USC 1605(a), was premised on the allegation that the defendant failed to disclose the document preparation fee as part of the finance charge, in violation of Regulation Z, 12 CFR 226.4(c)(7). 15 USC 1605(e) exempts from inclusion in the computation of the finance charge fees for preparation of loan-related documents. Section 226.4(c)(7) instructs that fees for preparation of loan-related documents are excluded from the finance charge if they are bona fide and reasonable in amount. The defendant's executive officers testified that the document preparation fee was charged to defray the defendant's costs in preparing documents associated with taking a loan from application to closing and selling the loan in the secondary market or keeping it. This evidence raises a question of material fact regarding whether the fee was bona fide. However, there is no question that a $250 document preparation fee was reasonable for western Michigan under a relevant market comparison approach.

Affirmed in part, reversed in part, and remanded for further proceedings.

O'CONNELL, J., dissenting, would affirm the trial court's decision that the TILA claims of both plaintiffs, Cowles and Paxson, were barred by the applicable statute of limitations. Furthermore, the document preparation fee was both bona fide and reasonable.

The threshold consideration for class certification is that the class representative be a member of the class. Plaintiff Cowles could not be a member of the class when she filed the second amended complaint alleging the TILA claim because the period of limitations had expired on that claim before she filed the original complaint alleging that the defendant engaged in the unauthorized practice of law. Consequently, there could not be any tolling of the statute of limitations on the TILA claim, even under the majority's erroneous conclusion that the filing of the original complaint tolled the statute of limitations for class members on any new claims arising from the same course of conduct. Plaintiff Cowles had no viable TILA claim and the trial court erred when it certified the class and made her class representative. Moreover, the applicable period of limitations on Paxson's TILA claim expired before Cowles's second amended complaint alleged the certified TILA class action claim. Because the filing of Cowles's original, legally infirm complaint did not toll the statute of limitations, both Paxson and Cowles should be barred from representing the class. Certification of a class should only toll the statute of limitations for

claims that originally and properly receive certification. Any new claims would need separate certification and not benefit from the tolling rules until a trial court separately certified the claims as worthy of class status, including the eligibility of the class representative.

LIMITATION OF ACTIONS — CLASS ACTION — AMENDED COMPLAINTS — STATUTE OF LIMITATIONS — TOLLING — RELATION-BACK DOCTRINE.

The rules of civil procedure that permit the relation back of amendments adding new claims that arise out of the same course of conduct alleged in an original pleading apply to class actions; where the original complaint, filed within the statute of limitations, alleges a claim and an amended complaint adds another claim based on the same transactional setting involved in the original complaint, the amended complaint relates back to the filing of the original complaint and the statute of limitations applicable to the new claim is treated as tolled as of the filing of the original complaint (MCR 2.118[D]).

*Drew, Cooper & Anding* (by *John E. Anding* and *Christopher G. Hastings*) for the plaintiffs.

*Warner Norcross & Judd LLP* (by *William K. Holmes* and *Molly E. McFarlane*) for the defendant.

Before: GAGE, P.J., and O'CONNELL and ZAHRA, JJ.

GAGE, P.J. Plaintiffs appeal by leave granted from the trial court's March 24, 2000, order summarily dismissing intervening plaintiff Karen B. Paxson's claim under the Truth in Lending Act (TILA), 15 USC 1601 *et seq.*, as barred by the applicable statute of limitations. Summary disposition was previously granted to defendant on plaintiffs' other pleaded claims. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Plaintiff Kristine Cowles received a residential real estate mortgage loan from defendant, which loan closed on February 7, 1997. Cowles was charged a $250 document preparation fee, and the fee was disclosed on Line

1105 of her United States Department of Housing and Urban Development settlement statement (HUD-1), a standardized form used in residential real estate loan closings.

On July 1, 1998, Cowles filed a complaint alleging several claims related to the document preparation fee. The complaint was filed on her own behalf and that of a class of consumers similarly wronged by the payment of the document preparation fee. The class was defined to include all consumers who obtained real estate loans in Michigan from defendant and who were charged with, and paid or financed, the document preparation fee in the six-year period before the date of the filing of the complaint. Cowles specifically alleged that defendant's conduct in preparing documents and charging a fee for the service constituted the unauthorized practice of law. She also alleged violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.,* and claims for replevin, unjust enrichment, innocent misrepresentation, and negligent misrepresentation.

On August 20, 1998, Cowles amended her complaint to add an allegation that the charged document preparation fee violated TILA, 15 USC 1638, because the document preparation fee was improperly identified on the TILA disclosure form as a fee "paid to others on your behalf." The fee was actually retained by the bank and not paid to others. Cowles also alleged that the document preparation fee exceeded the cost of actual preparation of the "final legal papers." Defendant's motion for summary disposition on the TILA claim was granted. Plaintiffs have not appealed that ruling.

On February 16, 1999, Cowles filed a second amended complaint, alleging another TILA violation, specifically that defendant's failure to disclose the docu-

ment preparation fee violated 15 USC 1605(a) and Regulation Z, 12 CFR 226.4(c)(7).

The trial court subsequently certified the class as described in Cowles's second amended complaint with Cowles acting as the class representative for all the claims. Defendant moved for reconsideration, arguing that Cowles's individual TILA claim was time-barred by the statute of limitations and thus she could not represent the class with respect to that claim. Defendant also moved for summary disposition on the merits of the TILA claim.

Paxson thereafter moved to intervene in the action and serve as the class representative for the TILA claim. Paxson obtained a residential refinancing loan from defendant on February 9, 1998, and was charged the $250 document preparation fee. Paxson's motion to intervene was granted, and she filed a complaint in intervention. The trial court later granted summary disposition to defendant on Cowles's TILA claim, finding that the statute of limitations barred her claim. The statute of limitations for a TILA claim is one year from the date of the alleged violation. 15 USC 1640(e). Cowles filed her initial complaint on July 1, 1998, more than one year after the closing on her loan. Her TILA claim was time-barred before she filed her initial complaint.

On January 10, 2000, the trial court granted summary disposition to defendant on all of plaintiffs' remaining claims with the exception of Paxson's TILA claim. Thereafter, both defendant and Paxson separately moved for summary disposition on the TILA claim. The trial court eventually ruled that Paxson's TILA claim was meritorious but was barred by the applicable statute of limitations. It determined that the claim accrued more than one year before the TILA claim was pleaded in

Cowles's second amended complaint. Thus, the claim was untimely. The trial court did not relate the second amendment of the complaint back to the filing of the initial complaint.

This Court granted plaintiffs' application for leave to appeal and then held the appeal in abeyance pending the Supreme Court's resolution of *Dressel v Ameribank,* 468 Mich 557; 664 NW2d 151 (2003). In *Dressel,* the Court held that a bank does not engage in the unauthorized practice of law when it completes standard mortgage forms and charges a fee for that service. *Id.* at 569. This ruling resolved plaintiffs' unauthorized practice of law issue, which was then dismissed by order of this Court. We now address plaintiffs' remaining allegations of error.

I

Plaintiffs first argue that the trial court erred in granting summary disposition on the MCPA claims. We disagree. In *Newton v Bank West,* 262 Mich App 434; 686 NW2d 491 (2004), we recently held that the defendant's residential mortgage loan transactions were exempt from the MCPA by virtue of MCL 445.904(1)(a). Because the transactions are exempt from the provisions of the MCPA, summary disposition on those claims was appropriate.

II

Plaintiff Paxson next challenges the trial court's grant of summary disposition to defendant on her TILA claim. Neither the Michigan Court of Appeals nor the Michigan Supreme Court has decided whether the amendment of a class action complaint to add new theories of liability relates back to the filing of the

initial complaint for purposes of computing the expiration of the period of limitations. Thus, whether Paxson's TILA cause of action was barred by the period of limitations involves an issue of first impression and an issue of law, which is reviewed de novo. *Collins v Comerica Bank,* 468 Mich 628, 631; 664 NW2d 713 (2003).

The TILA claim was formally pleaded in Cowles's second amended complaint, which was filed on February 16, 1999. Defendant argues that the statute of limitations for Paxson and all other class members was not tolled with respect to that claim on that date. When the second amended complaint was filed, more than one year had passed since Paxson's TILA claim accrued on February 9, 1998. Therefore, defendant argues that Paxson's claim is barred by the statute of limitations. We disagree.

MCR 3.501(F)(1) provides that the statute of limitations is tolled with respect to all persons within the class described in the complaint on the commencement of an action asserting a class action. MCR 3.501(F)(2) delineates several circumstances in which the statute of limitations resumes running against class members, specifically, on the filing of a notice of the plaintiff's failure to move for class certification; twenty-eight days after notice of the entry, amendment, or revocation of an order of certification eliminating the person as a member of the class; entry of an order denying certification of the action as a class action; submission of an election to be excluded from the class; or final disposition of the action.

Paxson was a member of the original class described in the complaint on the commencement of Cowles's original class action. The class was ultimately certified and none of the circumstances of MCR 3.501(F)(2) occurred that could have caused the period of limitations to resume running against Paxson or any other

class members. Thus, we find that the statute of limitations was tolled with respect to Paxson. The question then arises whether amendments to the complaint, adding claims arising out of the conduct, transaction, or occurrence alleged in the original complaint, relate back to the date of the initial filing when the statute of limitations was tolled.

We initially observe that the court rules governing representative actions, as set forth in subchapter 3.500 of the Michigan Court Rules, are not comprehensive. Thus, the general, civil procedure court rules must necessarily be applied to supplement the specific rules pertaining to representative actions.

There is no particular court rule or authority governing the relation back of amendments in class action lawsuits. MCR 2.118(D), however, provides the general rule that an amendment adding a claim relates back to the date of the original pleading if the claim asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth in the original pleading. An amended pleading may introduce new facts, new theories, or even a different cause of action as long as the amendment arises from the same transaction set forth in the original pleading. *Doyle v Hutzel Hosp,* 241 Mich App 206, 212-213; 615 NW2d 759 (2000), citing *LaBar v Cooper,* 376 Mich 401, 406; 137 NW2d 136 (1965). More than thirty years ago, the Supreme Court departed from the strictures of its old rulings and determined that amendments arising "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" were permitted. *LaBar, supra* at 407-408. "The test [] is no longer whether an amendment states a new cause of action, but is whether it arises out of the conduct, transaction,

or occurrence alleged in the original pleading sought to be amended." *Id.* Michigan courts have consistently adhered to the aforementioned rule of law. Amendments setting forth new legal theories are not barred by the applicable statutes of limitations if derived from the same transactional setting. *Doyle, supra* at 219-220.

The federal rules of civil procedure and prior United States Supreme Court decisions also provide that amendments relate back to the initial filing for purposes of the statute of limitations. *Tiller v Atlantic C L R Co,* 323 US 574, 581; 65 S Ct 421; 89 L Ed 465 (1945). In *Tiller,* the plaintiff originally sued under one federal act and later amended to add a new theory of liability under another federal act. *Id.* at 575. The amendment was made after the period of limitations had expired on the newly asserted claim. *Id.* at 580. The Supreme Court held that both theories of liability related to the same general conduct, transaction, or occurrence. *Id.* at 581. "The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased." *Id.*

> There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in respondent's [railroad] yard. [*Id.*]

In this case, the cause of action was always to recover damages related to the document preparation fee charged in connection with the residential mortgage loans. The additional theory under the TILA, which was added through the second amended complaint, related to the same conduct or transaction as pleaded in the original complaint.

We disagree that the ruling in *American Pipe &
Constr Co v Utah*, 414 US 538; 94 S Ct 756; 38 L Ed 2d
713 (1974), compels us to disregard the general rule of
the relation-back doctrine when the action is a repre-
sentative one and not an individual one. The Court in
*American Pipe* did not address an amendment in a
class action lawsuit and did not address the relation
back of amendments. In that case, several individuals
and companies were sued by the United States govern-
ment to restrain them from violating the Sherman Act
and for violations of the Clayton Act, and False Claims
Act. *Id.* at 540. The Clayton Act, 15 USC 16(b),
provided that, when a proceeding is instituted by the
United States to enforce antitrust laws, the running of
the statute of limitations "in respect of every private
right of action arising under said laws," and based on
any matter complained of in the proceeding, is sus-
pended during the pendency of the proceeding and for
one year after. *Id.* at 541-542. Within one year after
judgment was entered in the litigation between the
United States and the several entities, the state of
Utah commenced a class action for damages against
American Pipe and other companies based on a Sher-
man Act violation. *Id.* at 541. The defendants moved
for an order declaring that the suit could not be
maintained as a class action. *Id.* at 542-543. The
motion was granted, and class certification was de-
nied. Eight days later, more than sixty parties, who
were described as members of the original class, moved
to intervene as plaintiffs in Utah's action. *Id.* at
543-544. Their motions were denied by the district
court because the period of limitations on the indi-
vidual claims, as tolled by 15 USC 16(b), had run. *Id.*
at 544. The filing of Utah's class action did not toll the
statute of limitations. *Id.* The Ninth Circuit Court of

Appeals reversed, and the Supreme Court later granted certiorari to consider the tolling issue. *Id.* at 541-545.

The Supreme Court, noting that a federal class action is truly a representative suit designed to avoid repetitious filings, determined that the commencement of the action by the state of Utah satisfied the purpose of the limitation provision with respect to all those who might subsequently participate in the suit, as well as the named plaintiffs. *American Pipe, supra* at 550-551. Until the issue of class certification was decided, the statute of limitations was tolled:

> Rule 23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action. During the pendency of the District Court's determination in this regard, which is to be made "as soon as practicable after the commencement of an action," potential class members are mere passive beneficiaries of the action brought in their behalf. Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. It follows that even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and its ultimate judgment. [*Id.* at 552.]

The Supreme Court unequivocally held that "the commencement of a class action suspends the applicable statute of limitations with respect to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at

554. The Court additionally discussed that its ruling was not inconsistent with the functional operation of a statute of limitations. *Id.*

> [S]tatutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." The *policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation,* whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional interveners. [*Id.* at 554-555 (citations omitted; emphasis added).]

Both defendant and the trial court interpret the ruling in *American Pipe* to require notification of specific causes of action before the period of limitations on those claims expires. Given that the *American Pipe* Court was not addressing the relation back of amendments, we decline to interpret the language in that manner. Unlike the class in *American Pipe,* the class in the instant case was certified, and the statute of limitations continued to be tolled "as to all persons within the class described in the complaint." MCR 3.501(F). By way of the initial pleading, defendant was put on notice of the subject matter of the suit, specifically the docu-

ment preparation fee and the manner in which it was disclosed and handled. Defendant was also put on notice of the size of the prospective class as outlined in the initial complaint.

In *Crown, Cork & Seal Co v Parker,* 462 US 345; 103 S Ct 2392; 76 L Ed 2d 628 (1983), the Court revisited its ruling in *American Pipe.* Again, however, the Court was not called on to address the relation back of amendments in class action litigation. In *Crown,* class certification was denied in an employment discrimination action. *Id.* at 347-348. Within ninety days of the denial of class certification, the respondent filed a separate action alleging his claim for employment discrimination. *Id.* at 348. The trial court dismissed the action on the ground that it was not timely filed. *Id.* The Fourth Circuit Court of Appeals reversed, and the Supreme Court granted certiorari. *Id.* at 348-349. The Supreme Court ruled that the filing of a class action tolls the statute of limitations for all asserted class members and not just those who subsequently intervene in the named plaintiffs' action. *Id.* at 350. If the filing of the class action did not toll the statute of limitations, class members would not be able to rely on the existence of the suit to protect their rights. *Id.* "Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure their rights would not be lost in the event that class certification was denied." *Id.* The Court noted that there would be a needless multiplicity of actions if every class member, who was fearful that class certification might be denied, took steps to file their own action. *Id.* at 350-351.

In this case, Paxson and other members of the potential class were entitled to rely on the existence of the class action and attendant tolling provisions to

protect their rights with respect to claims arising from the charging of the document preparation fee. Cowles moved to file her second amended complaint, adding the TILA claim, before the period of limitations expired on Paxson's individual claim. If Paxson were not permitted to rely on the tolling provisions to protect her TILA claim, every member of the class would be compelled to intervene and assert their separate claims without waiting to determine how the class action litigation would develop. More importantly, class members for whom the period of limitations may expire while a motion to amend to add the new claim is pending, could only protect their rights by intervening or filing separate actions to maintain those claims in the event that amendment is denied or is ordered after the period of limitations expires on their individual claims. The resulting multiplicity of actions would negate the efficiency for which class action litigation is designed.

Our ruling does not unfairly disadvantage class action defendants. Applicable court rules govern the amendment of pleadings. Thus, plaintiffs would not be able to add new theories or causes of action without stricture.[1] The dissent states that this "approach allows a massive suit, brimming with countless phantom plaintiffs, to rise repeatedly from its own ashes like a litigious Phoenix until a vexed and exhausted defendant finally pays it enough money to haunt someone else." *Post* at 240. This case is not, however, about resurrecting or manufacturing a new claim with a new class of

---

[1] The dissent raises an unfounded concern that, without ruling in the manner suggested, the plaintiffs will continue to conjure legal issues and amend their complaint. This assertion completely disregards that trial courts have discretion with respect to the amending of complaints. MCR 2.118(A)(2). Plaintiffs in class action lawsuits will not have unfettered discretion to keep amending the complaint until they find a cause of action on which they can prevail.

plaintiffs, but is about protecting the claims of class members who relied on the class action.

Moreover, defendant herein is not disadvantaged any more than if each plaintiff in the class had filed separate suits at the outset or filed separate TILA claims before the period of limitations expired on their individual claims. If Paxson had filed an individual lawsuit on July 1, 1998, alleging the unauthorized practice of law, and later moved to amend to add the TILA claim, there is no question that the claim would relate back to the date of her original pleading regardless of whether the period of limitations on the TILA claim had expired. MCR 2.118(D). If the class action is truly a representative suit, then Paxson should not be treated differently because she was merely a member of a class in a representative action and not a named plaintiff in an independent action. We find no reason, nor do we find any controlling authority, that requires departure from the general rule of the relation-back doctrine when the action is a representative one and not an individual one.

In the conclusion of his dissent, Judge O'CONNELL indicates that he "would also hold that certification of a class only tolls the statute of limitations for claims that originally and properly received certification." *Post* at 240. This proposition is not supported by citation to authority or by analogy to any authority, and it ignores the purpose of class litigation. If class members cannot rely on the named plaintiff to toll the period of limitations on their claims, each class member will be required to separately bring all claims in his own name on the chance that the representative plaintiff will later be found to have an invalid claim and that the benefit of tolling will not apply. As is noted before, if Paxson had filed an individual lawsuit and later moved to amend to add the TILA claim, there is no question that the claim

would relate back to the date of her original pleading under MCR 2.118(D). The dissent does not address why this result should change where the situation involves a class action suit and Paxson was initially an unnamed plaintiff. It bears repeating that *no new class members will be added or will benefit from the relation-back doctrine.*

Further, our ruling does not unfairly disadvantage defendant with respect to the number of class members. The relation-back doctrine does not apply to the addition of new parties. *Hurt v Michael's Food Ctr, Inc,* 220 Mich App 169, 179; 559 NW2d 660 (1996); *Yudashkin v Holden (On Remand),* 247 Mich App 642, 649; 637 NW2d 257 (2001). In *Arneil v Ramsey,* 550 F2d 774, 782-783 (CA 2, 1977), the court ruled that, because the plaintiffs were not members of the originally asserted class, they could not rely on tolling to save their claims. The filing of the initial complaint in *Arneil* did not put the defendant on notice of the existence and number of plaintiffs outside the definition of the class found within the initial pleading. *Id.* Defendant herein argues that the second amended complaint expanded the class in this case. Any class members added by way of the second amended complaint, however, are new parties, not a "fresh class" of plaintiffs as the dissent claims. They may not avail themselves of the relation-back doctrine to save claims that may be time-barred. The initial complaint advised defendant of the size of the class with which it was dealing.

This is not a situation where Paxson tried to "piggyback" class actions. The rule against "piggybacking" operates to preclude plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive class actions. *Andrews v Orr,* 851 F2d 146, 149 (CA 6, 1988), citing *Korwek v Hunt,* 827 F2d

874, 879 (CA 2, 1987). The "pendency of a previously
filed class action does not toll the statute of limitations
period for additional class actions by putative members
of the original asserted class." *Id.* In this case, there was
only one class action. There were no new, repetitive
actions filed by any of the plaintiffs in the class.

Within the statutory period, defendant was put on
notice that Cowles and members of the class were
seeking monetary damages related to the payment of
the document preparation fee. Because the legal theo-
ries asserted in the initial complaint and the second
amended complaint were derived from the same trans-
actional setting of which defendant had notice, the
amendments relate back to the initial filing, and Pax-
son's TILA claim is not barred by the statute of limita-
tions. *Doyle, supra* at 219-220.

In reaching our conclusion, we reject the argument
that the statute of limitations never tolled on the TILA
claims because the period of limitations expired before
Cowles's complaint was filed and, thus, she was never a
valid class representative for that claim. It is well-
settled that a plaintiff who cannot maintain the cause of
action as an individual is not qualified to represent the
proposed class. *A & M Supply Co v Microsoft Corp*, 252
Mich App 580, 598; 654 NW2d 572 (2002). However,
when the class was certified in this case, there were
plaintiffs like Paxson in the class who had valid TILA
claims and could have served as the class representative
for those claims.[2] The court could have allowed any

---

[2] We find it interesting that the dissent incorrectly refers to Paxson as
a "new party" to the action. Paxson was a member of the original class of
plaintiffs. She was an unnamed plaintiff until she moved to intervene,
and the class of plaintiffs was defined at the outset. Our courts have
recognized that nonrepresentative members of a class are parties to the
litigation. *Warren Consolidated Schools v W R Grace & Co*, 205 Mich App

appropriate class member to substitute as the class representative. In *Haas v Pittsburgh Nat'l Bank,* 526 F2d 1083, 1095 (CA 3, 1975), the class should never have been certified with Haas as the representative for claims against a particular defendant. Haas's standing to remain as the class representative for the particular claims was challenged after the class was certified. *Id.* The court ordered that a nominal plaintiff be added to represent the class for the particular claims. *Id.* at 1095-1096. The only change in the class action effectuated by the order was the addition of a nominal plaintiff with standing. *Id.* at 1097. The newly named plaintiff was in existence and described in the class at the time the complaint was initially filed by Haas. *Id.* Class members have a right to rely on their representatives until the court rules otherwise. *Brink v DaLesio,* 667 F2d 420, 428 (CA 4, 1981). Paxson and other class members had a right to rely on Cowles as the class representative. Allowing Paxson to intervene as a named plaintiff affected the class action only by adding a named plaintiff to prosecute the properly added TILA claim.[3]

In sum, we conclude that the relation-back doctrine applies to Paxson's TILA claim and the claim was improperly dismissed on motion for summary disposition.

---

580, 585; 518 NW2d 508 (1994); *Pressley v Wayne Co Sheriff,* 30 Mich App 300, 318; 186 NW2d 412 (1971). More importantly, the United States Supreme Court recently ruled that unnamed or nonrepresentative members of a class action are parties to the action for various procedural purposes; for example, the tolling of the statute of limitations and appealing settlements or judgments. *Devlin v Scardelletti,* 536 US 1, 9-11; 122 S Ct 2005; 153 L Ed 2d 27 (2002).

[3] The trial court ruled that the relation-back doctrine did not apply, and that decision had nothing to do with the class certification order. The dissent inexplicably focuses on the decision allowing Paxson to intervene and file her complaint in intervention, and no appeal was taken from this decision.

III

Given our decision that Paxson's TILA claim was improperly dismissed on statute of limitations grounds, we need to address defendant's alternative argument that summary disposition was nevertheless warranted as a matter of law. MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a plaintiff's claim. *Murad v Professional & Admin Union Local 1979*, 239 Mich App 538, 541; 609 NW2d 588 (2000). The pleadings, affidavits, depositions, admissions, and other documentary evidence is considered in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact for trial. *Id.*

Paxson pleaded a violation of the TILA based on defendant's failure to include the document preparation fee as part of the annual percentage on the Truth in Lending disclosure statement. 15 USC 1605(a) provides:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. The finance charge shall not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges.

Subsections 1 through 6 of 15 USC 1605(a) set forth a list of examples of charges that are included in the finance charge. Additionally, 15 USC 1605(e) provides a list of items that shall not be included in the computa-

tion of the finance charge. One of those items is "fees for preparation of loan-related documents." 15 USC 1605(e)(2). Paxson additionally pleaded that defendant's failure to disclose the document preparation fee as part of the finance charge on the itemization of the amount financed violated Regulation Z, 12 CFR 226.4(c)(7), which instructs that fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents, are excluded from the finance charge if they are bona fide and reasonable in amount.

A resolution of the issue involves interpretation of federal law. When construing federal statutes and regulations, we are governed by authoritative decisions of the federal courts. *Bement v Grand Rapids & I R Co,* 194 Mich 64, 65-66; 160 NW 424 (1916). Where no decision on a particular issue has been rendered by the United States Supreme Court, we are free to adopt decisions of the lower federal courts if we find their analysis and conclusions persuasive and appropriate for our jurisprudence. *Abela v Gen Motors Corp,* 469 Mich 603, 606-607; 677 NW2d 325 (2004).

In *Brannam v Huntington Mortgage Co,* 287 F3d 601 (CA 6, 2002), the plaintiffs argued that the $250 document preparation fee was not bona fide and reasonable such that it could be excluded from the finance charge. The court acknowledged that the TILA exempts fees for preparation of loan-related documents from the computation of the finance charge. *Id.* at 603. The Sixth Circuit Court of Appeals considered whether the $250 fee was bona fide and reasonable. *Id.* at 603-604. The evidence did not support that the fee covered anything more than document preparation costs. Thus, there was no evidence to support that the fee was not "bona fide" under Regulation Z. *Id.* at 606. With respect to the

reasonableness of the $250 charge, the court determined that a fee is reasonable if it is for a service actually performed and reasonable in comparison to prevailing practices of the industry in the relevant market. *Id.* The evidence supported that $250 was a reasonable document preparation fee for western Michigan. *Id.*

In this case, unlike in *Brannam*, there is a question of material fact with respect to whether the fee was "bona fide." The term "bona fide," as used in Regulation Z, is not defined. 12 CFR 226.2(b)(3) provides that, unless a term is specifically defined in Regulation Z, "the words used have the meanings given to them by state law or contract." We construe undefined words used in statutes according to their plain and ordinary meanings. *Cox v Flint Bd of Hosp Mgrs*, 467 Mich 1, 18; 651 NW2d 356 (2002). Resort to dictionary definitions is acceptable and useful in determining ordinary meaning. *Id.* The term "bona fide" means made or done in good faith, without deception or fraud, authentic, genuine, real. *Random House Webster's College Dictionary* (1997). The purpose of TILA is to assure a meaningful disclosure of credit terms so consumers may compare various credit terms to allow them to avoid uninformed uses of credit. 15 USC 1601(a); *Inge v Rock Financial Corp*, 281 F3d 613, 619 (CA 6, 2002). With that purpose in mind, and using the ordinary definition of "bona fide," a document preparation fee is not bona fide, authentic, or genuine, if it includes charges for items other than document preparation.

There was evidence in this case to support that the document preparation charge was not "bona fide." Paul Sydloski, defendant's president, testified that he believed that the document preparation fee was charged to cover or defray defendant's expenses, specifically the costs associated "with taking a loan through the entire

sequence from the application through the closing" and subsequently selling it to the secondary market or keeping it. Sydloski believed that defendant's senior management employees held the same view. He was unsure whether there was any difference between a document preparation fee and a loan processing fee. James Koessel, the bank's chief lending officer, testified that the document preparation fee was initially instituted at $100 to "defray some of the costs" incurred in preparing documents. Koessel admitted, however, that the document preparation fee was eventually replaced by a "loan-processing fee," which is properly disclosed as part of the finance charge. We believe the evidence presents a question of material fact with respect to whether the fee was for a variety of services necessary to take the loan from application through closing and beyond. Because a genuine issue of material fact exists with respect to whether the fee was bona fide, summary disposition on the merits of the TILA claim is inappropriate.

We note, however, that there is no question of material fact with respect to reasonableness. We agree with the *Brannam* Court that reasonableness is measured by looking at the marketplace, and we note that the market comparison approach is compatible with ordinary dictionary definitions of the term "reasonable," which include logical, not exceeding the limit prescribed by reason, not excessive, moderate. *Random House Webster's College Dictionary* (1997). The *Brannam* Court determined that $250 was a reasonable document preparation fee in west Michigan. *Id.* Paxson has failed to offer evidence to dispute that $250 is reasonable in west Michigan for document preparation.

IV

Paxson also argues on appeal that, if this Court finds that her TILA claim was barred by the statute of limita-

tions, it should hold that the trial court abused its discretion in refusing to allow Sandra and Robert Glasser to intervene and act as class representatives for that claim. We need not address this issue in light of our ruling on Paxson's claim. Nevertheless, we find that the trial court did not abuse its discretion in denying the Glassers' motion to intervene. Class members have a right to intervene, "subject to the authority of the court to regulate the orderly course of action." MCR 3.501(A)(4). In general, permissive motions to intervene are considered in light of whether intervention will result in undue delay or prejudice to the rights of the original parties. MCR 2.209(B). The trial court's determination that intervention would interfere with the orderly course of action, and would delay the action, is supported by the record before us.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

ZAHRA, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. I concur with the trial court that both Truth in Lending Act (TILA), 15 USC 1601 *et seq.*; claims of plaintiffs Kristine Cowles and Karen B. Paxson are barred by the applicable statute of limitations. Since both claims are barred by the statute of limitations, I would affirm the decision of the trial court. In addition to the statute of limitations issue, the $250 fee charged was "bona fide and reasonable."[1] *Brannam v Huntington Mortgage Co,*

---

[1] The essence of the original complaint was that banks illegally practiced law when they charged a $250 fee for preparing mortgage closing documents. Unfortunately for plaintiffs, while this lawsuit was pending, the Supreme Court ruled that banks could charge a fee for this service. *Dressel v Ameribank*, 468 Mich 557, 568; 664 NW2d 151 (2003).

287 F3d 601, 606 (CA 6, 2002). Therefore, plaintiffs' TILA claim is meritless and remand would only further waste the state's limited judicial resources. I would affirm the decision of the trial court.

While the trial court eventually arrived at the correct decision in this case, it initially erred when it granted class status for plaintiff Cowles's TILA claim and allowed Cowles to represent the class. The period of limitations had run on Cowles's TILA claim before she filed her original complaint, in which she accused her bank of illegally engaging in the practice of law. Once the applicable period of limitations has run, it cannot be later tolled by filing new claims or amending a complaint. Therefore, the trial court certified Cowles as the representative for a class of litigants that she was legally barred from representing. MCR 3.501(A)(1). Because she was not eligible to represent the class, the rules expressly prohibited the trial court from certifying the class. MCR 3.501(A)(1)(d). "The threshold consideration for *class action certification* is that the proposed class representative must be a member of the class. A plaintiff who cannot maintain the cause of action as an individual is not qualified to represent the proposed

---

Cowles amended the complaint to allege that the $250 fee was unreasonable and, therefore, a violation of TILA. However, the Sixth Circuit Court of Appeals recently held that this same fee was a "bona fide and reasonable" document preparation charge under 15 USC 1605(e)(2) and 12 CFR 226.4(c)(7), so the bank need not include it in its computation of the finance charge. *Brannam, supra.* Therefore, even assuming that the period of limitations had not run on Cowles's complaint, the TILA claim lacks sufficient legal merit to withstand summary disposition. In *Brannam, supra* at 606, the Sixth Circuit ruled that "the fee should be considered reasonable if it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market." The Sixth Circuit found the fee reasonable under that standard, and we face an identical fee and the exact same issue as we review the validity of plaintiffs' TILA claim. I would affirm on this basis alone.

class." *Zine v Chrysler Corp*, 236 Mich App 261, 287; 600 NW2d 384 (1999) (emphasis added). Because the filing of the original complaint never tolled the already expired period of limitations, Cowles had no viable TILA claim, and the trial court clearly erred when it certified the class.

Later, recognizing that it had erroneously certified the class and its representative, the trial court attempted to cure the error by properly dismissing all the claims. Before it dismissed the claims, however, the attorneys for the improperly certified class found another plaintiff (Paxson) who ostensibly could fit the bill as a class representative on the TILA claim. When issues arose regarding Paxson's eligibility, the attorneys proffered two more alternative representatives. The trial court properly dismissed the case anyway.

Plaintiffs now argue that the trial court should not have dismissed their TILA claim merely because the court erroneously certified the class and the period of limitations had run on Paxson's claim. I disagree. The applicable period of limitations on Paxson's TILA claim ran on February 9, 1998. The second amended complaint alleging the TILA claim was not filed until February 16, 1998. Because I would hold that the filing of Cowles's original, legally infirm complaint does not toll the statute of limitations, both Paxson and Cowles should be barred from representing the class and we should affirm the trial court's dismissal.

The majority opinion goes astray when it fails to acknowledge that neither the TILA claim nor the original claim of illegal practice of law ever had a legitimate basis in the law. Deciding to disregard this detail, the majority allows Paxson to litigate the stale TILA claim as though the legal fiction of class status can somehow resurrect it. Propping up its legal reasoning on the

erroneously granted class status, the majority allows Paxson to emerge from anonymity, replace Cowles as class representative, and advance a new cause of action that Cowles could not legitimately assert herself.[2] The majority permits the substitution of claims and parties by glossing over Paxson's own failure to fit within the time restraints of the statute of limitations. Stretching the legal fiction of class status far beyond its rending point, the majority holds that the previously unknown Paxson, as a silent member of the ill-founded class, had actually asserted the new claim from the time of the original complaint. If the majority correctly deemed Paxson a new party,[3] the new claim would fail for tardiness. *Hurt v Michaels' Food Ctr, Inc*, 220 Mich App 169, 179; 559 NW2d 660 (1996).

The majority's contrary holding has more insidious ramifications than hyper-extending the statute of limitations on one claim for one group of litigants. It permits class litigants to ignore completely statutes of limitations as long as they can continue to muster fresh "class" plaintiffs with plausible causes of action stemming from the same general circumstances alleged in the complaint. If a court finds that one claim lacks legal

---

[2] It bears noting that the trial court could have disposed of this case solely on the grounds that the original illegitimate complaint never provided notice of the possibility that the new claim, based on totally different legal grounds, might later arise. *American Pipe & Constr Co v Utah*, 414 US 538, 554-555; 94 S Ct 756; 38 L Ed 2d 713 (1974).

[3] The majority fails to draw the vital distinction between a member of the class and a party to the litigation. While class members have a conditional right to intervene and become a party, MCR 3.501(A)(4), when they do so they naturally become new party plaintiffs. Intervention by definition is the procedure by which "a third party is allowed to *become* a party to the litigation." Black's Law Dictionary (7th ed) (emphasis added). So essentially, by intervening, Paxson became a new party plaintiff, and the case law and court rules involving new parties apply here.

support, the class's attorneys may simply conjure another legal issue, amend the complaint to include it, and avoid the running of any period of limitations by relating the claim back to their original, defeated complaint. If the representative did not suffer the new harm alleged or is legally barred from asserting it, the class may simply conjure one of its imaginary participants and put him at the class's helm. This approach allows a massive suit, brimming with countless phantom plaintiffs, to rise repeatedly from its own ashes like a litigious Phoenix until a vexed and exhausted defendant finally pays it enough money to haunt someone else.[4]

I would simply hold that the trial court clearly erred when it certified this class, so dismissal was proper. As a preemptive measure, I would also hold that certification of a class only tolls the statute of limitations for claims that originally and properly received certification. Any new claims would need separate class certification and would not benefit from the tolling rules until the trial court separately certified them as worthy of class status, including the eligibility of the representative. This holding would not contradict MCR 3.501(F) and would prevent the farcical promotion of dormant parties for the sole purpose of circumventing traditional relation-back and tolling principles. Because the majority's result enables litigants to abuse class action procedures and the present claim is ultimately doomed on its merits, I would affirm the decision of the trial court.

---

[4] An example well within the extreme would be a pharmaceutical case where a newborn was made a member of the class. Hypothetically, the majority opinion would allow the class to wait a year after the child turns eighteen to amend its complaint and add a completely new cause of action. MCL 600.5851(1). The delay could then perpetuate itself if the class remained open ended and new infants fell within the class description at the time of amendment. Fictions fail when they fail to assist justice. Delays cause real harm to litigants and, if encouraged, erode the integrity of the judicial system.