CAVANAGH, J.
The trial court in this class action dismissed intervening plaintiff Karen Paxson’s claim *4 against defendant Bank West under the Truth in Lending Act (TILA), 15 USC 1601 et seq., on the basis that it was barred by the statute of hmitations. The Court of Appeals reversed, holding, among other things, that the period of limitations applicable to Paxson’s claim was tolled under MCR 3.501(F) and that the claim was subject to the rule of relation back of amendments under MCR 2.118(D). Having concluded that Paxson’s claim was not time-barred, the Court of Appeals then held that summary disposition on the merits of Paxson’s TILA claim was improper because a question of fact exists concerning whether defendant’s document preparation fee was “bona fide” under applicable federal law.
In this matter of first impression, we must first decide whether the filing of a class-action complaint tolls the period of limitations under MCR 3.501(F) for a putative class member’s claim when that claim was not pleaded in the initial class-action complaint but arose out of the same factual and legal nexus. We hold that the filing of such a complaint is sufficient to toll the period of limitations as long as the defendant has notice of both the claim being brought and the number and generic identities of the potential plaintiffs. Accordingly, we affirm the Court of Appeals decision that, in this particular case, the intervening plaintiffs claim was not time-barred and, therefore, was improperly dismissed on statute of limitations grounds.
Because the claim was not time-barred in this particular case, we need not decide whether the amendment to the class-action complaint adding this claim related back to the date of the initial filing. Thus, we vacate that portion of the opinion of the Court of Appeals.
Finally, in light of our conclusion that Paxson’s claim was not time-barred, we must also address whether *5 summary disposition was nonetheless warranted under MCR 2.116(0(10) on the merits of Paxson’s claim. We agree with the Court of Appeals that summary disposition would be improper because a question of fact exists over whether the document preparation fee was “bona fide.” Therefore, we affirm in part, vacate in part, and remand for further proceedings in the trial court consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
On February 7, 1997, plaintiff Kristine Cowles obtained a residential real estate mortgage loan from defendant Bank West. In connection with this loan, defendant charged Cowles a $250 document preparation fee. The fee was reported on line 1105 of Cowles’s United States Department of Housing and Urban Development statement, also known as a HUD-1 settlement statement.
On February 9, 1998, intervening plaintiff Karen Paxson obtained a residential refinancing loan from defendant. Defendant similarly charged Paxson a $250 document preparation fee.
On July 1, 1998, Cowles filed a class-action complaint against defendant, alleging several claims concerning the document preparation fee. The class was defined to include all consumers who obtained real estate loans in Michigan from defendant and who were charged and paid or financed the document preparation fee in the six-year period before the filing of Cowles’s class-action complaint. In the complaint, Cowles claimed that defendant’s charging of a document preparation fee in connection with the services defendant provided constituted the unauthorized practice of law. Further, the complaint alleged that the document preparation fee violated certain provi *6 sions of the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq. Additionally, the class-action complaint asserted claims of replevin, unjust enrichment, innocent misrepresentation, and negligent misrepresentation.
On August 20, 1998, Cowles amended her complaint to add a claim that the document preparation fee also violated § 1638 of TILA, 15 USC 1638, because the fee was improperly identified on the TILA disclosure form. Cowles alleged that the document preparation fee was identified on the TILA disclosure form as a fee “paid to others on your behalf.” But Cowles claimed that defendant retained the fee and did not actually pay it to others. Further, the amended complaint claimed that the document preparation fee exceeded the cost associated with the actual preparation of the final papers. The trial court granted defendant’s motion for summary disposition on this TILA claim. Plaintiffs did not appeal that ruling in the Court of Appeals, and they have not appealed that ruling in this Court.
Subsequently, on February 16, 1999, Cowles filed a second amended complaint, adding a claim that defendant’s failure to disclose the document preparation fee resulted in a different TILA violation under 15 USC 1605(a)[1] *7 and Regulation Z, 12 CFR 226.4(c)(7).[2] Cowles claimed that defendant violated § 1605 and Regulation Z because the document preparation fee, as a finance charge, was not included in the loan’s annual percent *8 age rate (APR). Further, Cowles alleged that the document preparation fee did not relate to document preparation. The trial court then certified the class as described in Cowles’s second amended complaint, and Cowles acted as the class representative.[3] Notice was subsequently sent to the class members, and a list of all class members who opted out of the class was then filed in the trial court. Notably, Paxson did not opt out of the class.
Defendant moved in the trial court for reconsideration of the court’s decision to certify the class as described in Cowles’s second amended complaint. Defendant asserted that Cowles’s individual TILA claim under § 1605 was time-barred by the applicable statute of limitations, 15 USC 1640(e),[4] because the § 1605 *9 claim was pleaded more than one year after Cowles closed on her loan. Accordingly, defendant maintained that Cowles could not represent the class with respect to the § 1605 claim. Moreover, defendant moved for summary disposition of the § 1605 claim, as well as the other claims contained in the second amended complaint.
After defendant filed its motion for reconsideration, Paxson moved to intervene and serve as the class representative for the § 1605 claim. Paxson’s motion to intervene was granted, and she filed a complaint as an intervening plaintiff. The trial court granted defendant’s motion for summary disposition on Cowles’s § 1605 claim, reasoning that Cowles’s § 1605 claim was time-barred. Further, the trial court granted defendant summary disposition of all claims contained in the second amended complaint, except Paxson’s § 1605 claim.
Paxson and defendant then filed cross-motions for summary disposition on the § 1605 TILA claim. The trial court opined that Paxson’s § 1605 claim was meritorious. But the trial court ultimately ruled that the claim was time-barred under § 1640(e) because it was pleaded in the second amended complaint more than one year after Paxson’s claim accrued — the date she closed on her loan. The trial court concluded that Paxson’s claim was not tolled from the time Cowles filed the initial class-action complaint and that the second amended complaint did not relate back to the date of the initial complaint. Thus, the trial court revoked class certification with respect to the TILA claim brought under § 1605. Paxson appealed.
In a split, published decision, the Court of Appeals affirmed in part, reversed in part, and remanded the matter to the trial court. Cowles v Bank West, 263 Mich *10 App 213; 687 NW2d 603 (2004). Relying on Newton v Bank West, 262 Mich App 434; 686 NW2d 491 (2004), the Court of Appeals affirmed the trial court’s grant of summary disposition on the MCPA claims because defendant’s residential mortgage loan transactions were exempt from the MCPA by virtue of MCL 445.904(l)(a).[5] But the Court of Appeals held that the trial court improperly dismissed Paxson’s TILA claim under § 1605 on statute of limitations grounds. The Court of Appeals observed that whether the amendment of a class-action complaint to add new theories of liability relates back to the filing of the initial complaint for purposes of the period of limitations was an issue of first impression. Nonetheless, the Court of Appeals reasoned that under MCR 3.501(F), the period of limitations for Paxson’s TILA claim was tolled by the filing of the initial complaint. The Court of Appeals concluded that tolling was proper because Paxson was a member of the class described in the original complaint, the class was ultimately certified, and none of the circumstances set forth in MCR 3.501(F)(2) occurred that could have caused the period of limitations to resume running against Paxson or any other class member.
Next, the Court of Appeals concluded that amendments to a class-action complaint adding claims arising out of the conduct, transaction, or occurrence alleged in the original complaint relate back to the date of the initial filing when the period of limitations was tolled. The Court of Appeals reasoned that nothing in the *11 court rules dealing with representative actions suggests that those rules are comprehensive. Accordingly, the Court of Appeals turned to MCR 2.118(D), the general court rule that provides that an amendment adding a claim relates back to the date of the original pleading if the claim added in the amendment arose of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. According to the Court of Appeals, because the cause of action in this case was always to recover damages related to the document preparation fee charged in connection with residential mortgage loans, the TILA claim brought under § 1605 related to the same conduct or transaction as pleaded in Cowles’s initial class-action complaint.
Further, the Court of Appeals opined that nothing in the United States Supreme Court’s precedent dealing with the tolling doctrine compels the conclusion that the relation-back rule is inapplicable in the class-action context. See, e.g., American Pipe & Constr Co v Utah, 414 US 538; 94 S Ct 756; 38 L Ed 2d 713 (1974), and Crown, Cork & Seal Co, Inc v Parker, 462 US 345; 103 S Ct 2392; 76 L Ed 2d 628 (1983). Rather, the Court of Appeals reasoned that Paxson and other members of the potential class were entitled to rely on the existence of the class action and attendant tolling provisions to protect their rights with respect to claims associated with the document preparation fee. Moreover, the Court of Appeals concluded that if it were to hold otherwise, class members for whom the period of limitations may expire could only protect their rights by intervening or filing separate actions — something the class-action mechanism was intended to avoid.
Additionally, in responding to the Court of Appeals dissent, the Court of Appeals majority opined that its ruling would not unfairly disadvantage defendant be *12 cause the relation-back doctrine is limited in application and Paxson was not trying to “piggyback” her claim, observing that there were “no new, repetitive actions filed by any of the plaintiffs in the class.” Cowles, supra at 230. Further, the Court of Appeals observed that if Paxson had filed an individual lawsuit on July 1, 1998 — the date of Cowles’s initial complaint —alleging the unauthorized practice of law, and later moved to amend to add the TILA claim, there would be no question that the claim would relate back to the date of her original pleading, regardless of whether the period of limitations on the TILA claim had expired. Thus, the Court of Appeals held that MCR 2.118(D) applied in this instance and, thus, Paxson’s TILA claim related back to the date of the initial complaint.
In light of its conclusion that Paxson’s TILA claim was improperly dismissed, the Court of Appeals next addressed whether summary disposition was nevertheless warranted under MCR 2.116(C)(10). Specifically, the Court of Appeals addressed defendant’s argument that the document preparation fee was properly disclosed under Regulation Z, 12 CFR 226.4(c)(7), because the fee was bona fide and reasonable in amount. While the Court of Appeals agreed that there was no question of material fact with respect to the reasonableness of the fee, the Court of Appeals determined that there was a question of material fact whether the fee was bona fide. Pointing to defendant’s president’s testimony, the Court of Appeals reasoned that there was evidence presenting a material question of fact whether the fee was for a variety of services necessary to take the loan from application to closing or whether the fee was solely for document preparation. Therefore, the Court of Appeals concluded that summary disposition on the merits of the TILA claim was inappropriate.
*13 Defendant sought leave to appeal, and this Court granted leave to appeal. 474 Mich 886 (2005).
II. STANDARD OF REVIEW
The question whether the filing of a class-action complaint tolls the period of limitations for a class member’s claim that was not pleaded in the class-action complaint but arose out of the same factual and legal nexus is a question of law. This Court reviews questions of law de novo. Casco Twp v Secretary of State, 472 Mich 566, 571; 701 NW2d 102 (2005). Further, this Court reviews de novo a trial court’s decision on a motion for summary disposition. Ostroth v Warren Regency, GP, LLC, 474 Mich 36, 40; 709 NW2d 589 (2006).
III. ANALYSIS
A. TOLLING
In general, periods of limitations are tolled with regard to all class members upon the filing of a complaint asserting a class action. MCR 3.501(F) provides:
Statutes of Limitations.
(1) The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.
(2) The statute of limitations resumes running against class members other than representative parties and intervenors:
(a) on the filing of a notice of the plaintiffs failure to move for class certification under subrule (B)(2);
(b) 28 days after notice has been made under subrule (C)(1) of the entry, amendment, or revocation of an order of certification eliminating the person from the class;
(c) on entry of an order denying certification of the action as a class action;
*14 (d) on submission of an election to be excluded;
(e) on final disposition of the action.
(3) If the circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court, by reversal on appeal, or otherwise, the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action.
Here, the periods of limitations for Cowles’s TILA claim expired on February 7, 1998, one year after she closed on her residential real estate mortgage loan. 15 USC 1640(e). Cowles filed this class-action complaint on July 1, 1998; thus, Cowles’s TILA claim was untimely. Further, Cowles did not plead a TILA claim in her initial complaint, but she did plead a TILA claim in the second amended complaint. Accordingly, the first issue we must decide is whether the filing of Cowles’s initial complaint within the TILA period of limitations for Paxson’s claim, but outside the TILA period of limitations for Cowles’s claim, was sufficient to toll the period of limitations for Paxson’s claim on the previously unpleaded TILA claim under MCR 3.501(F). The Court of Appeals concluded that the period of limitations was tolled with respect to Paxson’s claim. We agree.[6] *15 MCR 3.501(F) was modeled after the United States *16 Supreme Court’s decision in American Pipe. In Ameri *17 can Pipe, supra at 553-555, the Court held that the filing of a class action tolls the period of limitations for all class members who timely intervene after a court denies class certification. This has come to be known as the class-action tolling doctrine. The Court reasoned that the doctrine was necessary to balance a class member’s right to pursue his claim if the class was not certified with a defendant’s right to be free from stale claims. Id. at 553-554.
The policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights are satisfied when, as here, a named plaintiff who is found to be *18 representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessaiy to determine both the subject matter and size of the prospective litigation .... [Id. at 554-555 (citations and quotation marks omitted).]
Further, the Court opined that the class-action tolling doctrine was needed to promote the judicial economy of the class-action mechanism. According to the Court, if the class-action tolling doctrine were not adopted, individual plaintiffs would be forced to intervene or file duplicative protective suits just in case the class was not certified or the action was dismissed on procedural grounds. Id. at 553. This would frustrate the purpose of the class-action mechanism, whereby putative class members are encouraged to remain passive during the early stages of the class action. Therefore, “[cjlass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights” because the federal class-action rule “permits and encourages class members to rely on the named plaintiffs to press their claims.” Crown, Cork & Seal, supra at 352-353. Accordingly, the Court in American Pipe, supra at 553, reasoned that the class-action tolling doctrine best serves the principal purposes of the class-action procedure — promotion of efficiency and economy of litigation. Indeed, not until the class is certified “does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it....” Id. at 552.
In Crown, Cork & Seal, the Court later extended the class-action tolling doctrine to class members who file individual actions after class certification is denied. *19 Crown, Cork & Seal, supra at 353-354. Notably, Justice Powell authored a concurrence in Crown, Cork & Seal that attempted to clarify what he posited was the foundation for the class-action tolling doctrine. In his concurrence, Justice Powell opined that the doctrine would not toll the period of limitations for subsequent claims that were unrelated to the claims asserted in the initial class-action complaint. Crown, Cork & Seal, supra at 354-355 (Powell, J., concurring). Concerned that “different or peripheral” claims would not afford a defendant sufficient notice and force the defendant to defend stale claims, Justice Powell opined that American Pipe and the class-action tolling doctrine applied where the subsequent claims “ ‘concern the same evidence, memories, and witnesses as the subject matter of the original class suit....’” Id. at 354-355 (citation omitted); see also United Airlines, Inc v McDonald, 432 US 385, 393 n 14; 97 S Ct 2464; 53 L Ed 2d 423 (1977). Stated differently, Justice Powell opined that unrelated claims “are not protected under American Pipe and are barred by the statute of limitations.” Crown, Cork & Seal, supra at 355 (Powell, J, concurring).
Some courts have relied on Justice Powell’s concurrence and concluded that the class-action tolling doctrine only applies to claims identical to those raised in the initial class-action complaint or claims that could have been raised in the initial complaint. See, e.g., Weston v AmeriBank, 265 F3d 366, 367 (CA 6, 2001) (“[T]he statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint.”); see also Raie v Cheminova, Inc, 336 F3d 1278, 1283 (CA 11, 2003) (“It is not enough for Appellants to rely on only that ambiguous class definition to support their argument for tolling under Ameri *20 can Pipe; they must demonstrate that their wrongful death action was included in the Seabury class action.”).
Other courts, however, have embraced Justice Powell’s reasoning and instead held that subsequent individual claims filed after class certification is denied need not be identical to the claims in the original class action for tolling to apply. See, e.g., Tosti v City of Los Angeles, 754 F2d 1485, 1489 (CA 9, 1985); Barnebey v E F Hutton & Co, 715 F Supp 1512, 1528-1529 (MD Fla, 1989). Rather, the subsequent individual claims must share a common factual and legal nexus to the extent that the defendant would likely rely on the same evidence or witnesses in mounting a defense. See, e.g., Cullen v Margiotta, 811 F2d 698, 719 (CA 2, 1987); see also Crown, Cork & Seal, supra at 355 (Powell, J., concurring) (“[W]hen a plaintiff invokes American Pipe in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that ‘concern the same evidence, memories, and witnesses as the subject matter of the original class suit,’ so that ‘the defendant will not be prejudiced.’ ”) (citation omitted). We believe that these latter courts have the better view and reject a rule that requires identical claims for tolling to occur under MCR 3.501(F).[7] Accordingly, under MCR 3.501(F), a class-action complaint tolls the period of limitations for a class member’s claim that arises out of the same factual and legal nexus as *21 long as the defendant has notice of the class member’s claim and the number and generic identities of the potential plaintiffs.
Our decision underscores the inherent tension that may appear to exist between the class-action mechanism and a statute of limitations. See, e.g., Lowenthal & Feder, The impropriety of class action tolling for mass tort statutes of limitations, 64 Geo Wash L R 532 (1996). But this tension was duly considered by this Court in adopting MCR 3.501(F), as well as by the American Pipe Court in crafting the class-action tolling doctrine. According to the American Pipe Court, statutes of limitations are important to the administration of justice by “ ‘preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.’ ” American Pipe, supra at 554 (citation omitted). But as later noted by the Court, the purpose of a statute of limitations is generally satisfied when a class action is filed.
[A] class complaint “notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.” The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification. [Crown, Cork & Seal, supra at 353 (citations omitted).]
In other words, crucial to whether the period of limitations is tolled under the class-action tolling doctrine and MCR 3.501(F) is notice to the defendant of both the claims being brought and the number and identities of the potential plaintiffs. See, e.g., Rochford v Joyce, 755 *22 F Supp 1423, 1428 (ND Ill, 1990) (“The statute of limitations will not be tolled for plaintiffs having ‘different or peripheral’ claims from those in the original class action suit. To ensure fairness, the later action must be similar enough to the earlier action so that the defendants are notified of the substantive claims against them, as well as the number and generic identities of the potential plaintiffs.”) (citation omitted).
Here, we believe that the aim of the statute of limitations was met with the filing of Cowles’s initial complaint and would not be frustrated by determining that Paxson’s TILA claim was not time-barred. The factual bases for Paxson’s TILA claim are the same as the factual bases for the claims raised in Cowles’s initial class-action complaint. Accordingly, the initial complaint notified defendant of “the number and generic identities of the potential plaintiffs.” Further, Paxson’s TILA claim involves the same “evidence, memories, and witnesses” as were involved in the putative class action. Moreover, we have a difficult time concluding that Cowles’s initial class-action complaint concerning the document preparation fee was insufficient to alert defendant to preserve the evidence regarding the fee and the services provided in connection with the fee. Simply stated, Paxson’s TILA claim is not such a “different or peripheral claim” so that tolling is not permitted under MCR 3.501. Crown, Cork & Seal, supra at 354 (Powell, J, concurring). The allegations in the initial complaint identify this case as a case where it can be seen from the initial complaint, the first amended complaint, the second amended complaint, and Paxson’s complaint that the alleged liability is based on the same acts. See, e.g., McCarthy v Kleindienst, 183 US App DC 321, 327; 562 F2d 1269 (1977). Therefore, “there can be no doubt *23 that [defendant] received sufficient notice of the contours of potential claims to toll the running of the statute of limitations.” Id.
Defendant’s alleged liability has always been based on the way it reported its document preparation fee and the propriety of the services it provided in connection with the fee. Further, Paxson has always been a member of the described class, and she was a member of the class that was originally certified in the second amended complaint, the complaint that alleged the § 1605 claim. Moreover, Cowles was deemed an inappropriate representative on procedural grounds. Accordingly, we are simply hard-pressed to conclude that defendant was not put on notice of the TILA claim asserted under § 1605 as well as of the number and generic identities of the potential plaintiffs.[8] Thus, our conclusion that the period of limitations applicable to Paxson’s TILA claim was tolled by Cowles’s initial *24 complaint is consistent with the functional goal of a statute of limitations and does not unduly prejudice defendant.[9]
Importantly, a contrary conclusion — limiting tolling under MCR 3.501(F) to claims identical to those that were asserted or may have been asserted in an initial complaint — would frustrate the very purpose of MCR 3.501. Specifically, the more rigid rule advanced by Justice CORRIGAN “would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing the very results .. . courts seek to prevent by such tolling, i.e., ‘court congestion, wasted paperwork and expense.’ ” Cullen, supra at 721 (citation omitted).[10] Moreover, and contrary to Justice *25 CORRIGAN’S assertions, Paxson did exactly what was encouraged of her under our court rules — she waited until the dust arguably settled before seeking to intervene. Accordingly, it cannot be fairly said that Paxson slept on her rights, because her claims were ostensibly being pursued by Cowles. Cowles filed a class action against defendant, and Paxson was included in the class. Further, Cowles then asserted a TILA violation under § 1638 before the period of limitations on Paxson’s individual TILA claim would have expired.[11] Cowles then amended her complaint to include a § 1605 claim after Paxson’s individual claim would have expired, and the trial court certified that class. But when it later appeared that the trial court was going to reconsider its certification ruling, Paxson then promptly sought to intervene. Accordingly, Paxson reasonably relied on the class-action mechanism and its corresponding tolling provision. If we were to hold otherwise, as Justice CORRIGAN suggests, countless potential class members like Paxson would be forced to file protective suits and, thus, circumvent the whole purpose behind MCR 3.501. “[U]nless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights.... A putative class member who fears that class certification may be denied would have every incentive to file a separate action *26 prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions ....” Crown, Cork & Seal, supra at 350-351. See also Devlin v Scardelletti, 536 US 1, 10; 122 S Ct 2005; 153 L Ed 2d 27 (2002) (“Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. See American Pipe[, supra]. Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation — to simplify litigation involving a large number of class members with similar claims — would be defeated.”). As aptly noted by the United States Court of Appeals for the Third Circuit:
The [American Pipe] Court was concerned that, if the statute of limitations is not tolled in situations where the district court’s ruling on maintenance of a class action is difficult to predict, members of a purported class might be induced to intervene as a matter of self-protection. Such protective intervention by class members might be compelled because those class members who have not intervened by the time the untolled statute of limitations runs would be unable to seek relief individually. The Court therefore reasoned that a rule which would result in the individual intervention of class members and which would “breed” needless duplicative motions was not in keeping with the objectives of the federal class action procedures. [Haas v Pittsburgh Nat’l Bank, 526 F2d 1083, 1097 (CA 3, 1975).][12]
*27 Therefore, the view advanced by Justice CORRIGAN— limiting MCR 3.501(F) tolling to identical claims that were asserted or may have been asserted in an initial complaint — would frustrate the very purpose of MCR 3.501.
Further, we perceive no sound reason for the limitation that Justice CORRIGAN would place on MCR 3.501(F). For example, just as the filing of a class action that does not meet the requirements for class certification generally tolls the period of limitations with respect to all persons within the class described in the complaint, American Pipe, supra, the filing of a class action by a person who does not meet the requirements to serve as the class representative also tolls the period of limitations. See, e.g., Birmingham Steel Corp v Tennessee Valley Auth, 353 F3d 1331, 1333 (CA 11, 2003) (holding that “the district court abused its discretion by decertifying the class without permitting class counsel reasonable time to determine whether a new class representative could be substituted”); Lynch v Baxley, 651 F2d 387 (CA 5, 1981) (holding that when the district court determined that the class representative did not have standing it should have allowed a class member with standing to become the new class representative); Haas, supra (holding that the filing of a class action by a class representative without standing tolls the period of limitations with regard to all asserted members of the class and that the amendment of the complaint by the addition of a class member with standing relates back to the original complaint). Simply stated, the American Pipe rule has been applied in cases involving almost every conceivable basis on which class action status *28 might be denied or terminated. Haas, supra (class representative had no standing); Lynch, supra (class representative had no standing); In re Crazy Eddie Securities Litigation, 747 F Supp 850 (ED NY, 1990) (named plaintiffs did not have standing); American Pipe, supra (lack of numerous class members); McCarthy, supra (lack of typicality); Green v United States Steel Corp, 481 F Supp 295 (ED Pa, 1979) (lack of typicality and commonality of class members); Gramby v Westinghouse Electric Corp, 84 FRD 655 (ED Pa, 1979) (lack of adequate representation); Bantolina v Aloha Motors, Inc, 75 FRD 26 (D, Hawaii, 1977) (withdrawal of class representative); Goodman v Lukens Steel Co, 777 F2d 113 (CA 3, 1985) (lack of adequate representation); Hemenway v Peabody Coal Co, 159 F3d 255 (CA 7, 1998) (lack of subject-matter jurisdiction); Tosti, supra (tolling permitted in separate suit where claim was not identical to class action); Barnebey, supra (tolling permitted for claims not asserted in class action); In re Linerboard Antitrust Litigation, 223 FRD 335 (ED Pa, 2004) (tolling permitted in separate class action brought by members who opted out of initial class action and who also brought new state law claims). In this regard, Justice CORRIGAN’s attempt to distinguish these cases is unpersuasive, and her dissent does not adequately explain why a contrary result should be reached in this case in light of those cases.
For example, Justice CORRIGAN does not adequately explain how, if the filing of a class action that does not meet the requirements for class certification nonetheless ordinarily tolls the period of limitations with respect to all persons within the class described in the complaint, American Pipe, supra, the filing of a class action by a person who does not meet the requirements to serve as the class representative somehow does not also toll the period of limitations. Similarly, Justice *29 CORRIGAN does not adequately explain how, if the filing of a class action by a class representative by someone without standing tolls the period of limitation with respect to all persons within the class described in the complaint, Lynch, supra; Haas, supra, the filing of a class action by a class representative whose own claim is time-barred would not also toll the period of limitations with respect to all persons within the class described in the complaint. Accordingly, rather than adopting Justice Corrigan’s questionable limitation, we again observe that the proper focus under MCR 3.501(F), as well as American Pipe and its progeny, is on the extent to which the claim arose out of the same factual and legal nexus and whether the defendant had notice of both the claim and the number and generic identities of the potential plaintiffs.[13]
Nor are we persuaded by Justice CORRIGAN’s additional argument that allowing “Paxson to now assert a TILA claim on behalf of the class would allow piggybacking of one class action onto another and, thus, tolling of the period of limitations indefinitely.” Post at 53.[14] Where class certification is denied or terminated on the basis that the class representative was inappropriate — i.e., not on the appropriateness of class *30 treatment for the underlying claims — tolling is permitted. McKowan Lowe & Co, Ltd v Jasmine, Ltd, 295 F3d 380, 389 (CA 3, 2002). Thus, where class certification is denied solely on the basis of the appropriateness of the class representative, “a second class would not be an attempt to relitigate the question of class certification” and, thus, judicial economy and the class mechanism will be furthered. In re Crazy Eddie Securities Litigation, 802 F Supp 804, 813 (ED NY, 1992); see also Catholic Social Services, Inc v Immigration & Naturalization Service, 232 F3d 1139 (CA 9, 2000); Yang v Odom, 392 F3d 97, 105-107 (CA 3, 2004). Such a rule is consistent with American Pipe and its progeny,[15] and it will also prevent the improper piggybacking of class-action claims.
Here, because the initial class action was decertified on grounds other than the appropriateness of the substantive claims for class treatment, Paxson’s TILA claim was tolled. Paxson was not “attempting to resuscitate a class that a court [had] held to be inappropriate as a class action.” McKowan, supra at 386. Accordingly, we believe that claims of improper “piggybacking” and “abuse” are unwarranted in this particular case.
Therefore, we hold that under MCR 3.501(F), Cowles’s initial class-action complaint tolled the period of limitations for Paxson’s TILA claim because her claim arose out of the same factual and legal nexus and defendant had notice of Paxson’s TILA claim. We are not prepared to conclude that only identical claims are sufficient for tolling purposes, because such a rule *31 would be at odds with MCR 3.501 itself. Nor are we prepared to hold that class-action tolling may never apply to subsequent class claims, because such a rule would unduly burden the goal of judicial economy and, thus, circumvent the class-action mechanism. Accordingly, we affirm that portion of the decision of the Court of Appeals.[16]
B. RELATION BACK
Even though the Court of Appeals concluded that the period of limitations was tolled with respect to Paxson’s TILA claim, the Court of Appeals addressed the issue whether the amendment to a class-action complaint adding claims arising out of the conduct, transaction, or occurrence alleged in the original class-action complaint relates back to the date of the initial filing. Moreover, the Court of Appeals holding that Paxson’s TILA claim was improperly dismissed rested primarily on its conclusion that the relation-back doctrine applied to her claim. Tolling under MCR 3.501(F), however, is conceptually distinct from relation back under MCR 2.118(D). Therefore, in light of our conclusion that Paxson’s TILA claim was not time-barred, whether the second amended complaint relates back to Cowles’s initial *32 complaint is not dispositive, and, thus, we need not address this issue in this particular case. Accordingly, we vacate that portion of the decision of the Court of Appeals.
C. “BONA FIDE” AND “REASONABLE”
Because we agree with the Court of Appeals ultimate conclusion that Paxson’s TILA claim was improperly dismissed, we must likewise address whether summary disposition was warranted under MCR 2.116(0(10). Summary disposition under MCR 2.116(0(10) is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted in the light most favorable to the opposing party. Skinner v Square D Co, 445 Mich 153, 161-162; 516 NW2d 475 (1994). “A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.” West v Gen Motors Corp, 469 Mich 177, 183; 665 NW2d 468 (2003).
The purpose of TILA is to “assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him....” 15 USC 1601(a). Accordingly, TILA requires lenders, like defendant, to provide a written statement summarizing the loan transaction, including all related finance charges. 15 USC 1605(a). Under TILA, “the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the *33 creditor as an incident to the extension of credit.” Id. Section 1605(a) sets forth a list of examples of fees and charges that are properly included in the finance charge. Significantly, 15 USC 1605(e) sets forth a list of certain items that are not properly included in the finance charge, and one of those items is “ [flees for preparation of loan-related documents.” 15 USC 1605(e)(2). Further, Regulation Z, 12 CFR 226.4(c)(7)(ii), provides that fees for preparing loan-related documents are not finance charges and, thus, need not be included in the finance charge “if the fees are bona fide and reasonable in amount[.]”
Here, Paxson claims that defendant violated § 1605 and Regulation Z because defendant’s document preparation fee, as a finance charge, was not included in the loan’s APR. Specifically, Paxson claims that defendant’s document preparation fee was not “bona fide and reasonable in amount” because the fee did not actually relate to document preparation. The Court of Appeals concluded that summary disposition under MCR 2.116(0(10) was inappropriate because, while there is no question of material fact with respect to the reasonableness of the document preparation fee, a question of fact exists whether defendant’s fee was bona fide within the meaning of applicable federal law. We agree and adopt the Court of Appeals following rationale as our own.
A resolution of the issue involves interpretation of federal law. When construing federal statutes and regulations, we are governed by authoritative decisions of the federal courts. Bement v Grand Rapids & I R Co, 194 Mich 64, 65-66; 160 NW 424 (1916). Where no decision on a particular issue has been rendered by the United States Supreme Court, we are free to adopt decisions of the lower federal courts if we find their analysis and conclusions *34 persuasive and appropriate for our jurisprudence. Abela v Gen Motors Corp, 469 Mich 603, 606-607; 677 NW2d 325 (2004).
In Brannam v Huntington Mortgage Co, 287 F3d 601 (CA 6, 2002), the plaintiffs argued that the $ 250 document preparation fee was not bona fide and reasonable such that it could be excluded from the finance charge. The court acknowledged that the TILA exempts fees for preparation of loan-related documents from the computation of the finance charge. Id. at 603. The Sixth Circuit Court of Appeals considered whether the $ 250 fee was bona fide and reasonable. Id. at 603-604. The evidence did not support that the fee covered anything more than document preparation costs. Thus, there was no evidence to support that the fee was not “bona fide” under Regulation Z. Id. at 606. With respect to the reasonableness of the $ 250 charge, the court determined that a fee is reasonable if it is for a service actually performed and reasonable in comparison to prevailing practices of the industry in the relevant market. Id. The evidence supported that $ 250 was a reasonable document preparation fee for western Michigan. Id.
In this case, unlike in Brannam, there is a question of material fact with respect to whether the fee was “bona fide.” The term “bona fide,” as used in Regulation Z, is not defined. 12 CFR 226.2(b)(3) provides that, unless a term is specifically defined in Regulation Z, “the words used have the meanings given to them by state law or contract.” We construe undefined words used in statutes according to their plain and ordinary meanings. Cox v Flint Bd of Hosp Managers, 467 Mich 1, 18; 651 NW2d 356 (2002). Resort to dictionary definitions is acceptable and useful in determining ordinary meaning. Id. The term “bona fide” means made or done in good faith, without deception or fraud, authentic, genuine, real. Random House Webster’s College Dictionary (1997). The purpose of TILA is to assure a meaningful disclosure of credit terms so consumers may compare various credit terms to allow them to avoid uninformed uses of credit. 15 USC 1601(a); Inge v Rock Financial Corp, 281 F3d 613, 619 (CA 6, 2002). With that *35 purpose in mind, and using the ordinary definition of “bona fide,” a document preparation fee is not bona fide, authentic, or genuine, if it includes charges for items other than document preparation.
There was evidence in this case to support that the document preparation charge was not “bona fide.” Paul Sydloski, defendant’s president, testified that he believed that the document preparation fee was charged to cover or defray defendant’s expenses, specifically the costs associated “with taking a loan through the entire sequence from the application through the closing” and subsequently selling it to the secondary market or keeping it. Sydloski believed that defendant’s senior management employees held the same view. He was unsure whether there was any difference between a document preparation fee and a loan processing fee. James Koessel, the bank’s chief lending officer, testified that the document preparation fee was initially instituted at $ 100 to “defray some of the costs” incurred in preparing documents. Koessel admitted, however, that the document preparation fee was eventually replaced by a “loan-processing fee,” which is properly disclosed as part of the finance charge. We believe the evidence presents a question of material fact with respect to whether the fee was for a variety of services necessary to take the loan from application through closing and beyond. Because a genuine issue of material fact exists with respect to whether the fee was bona fide, summary disposition on the merits of the TILA claim is inappropriate.
We note, however, that there is no question of material fact with respect to reasonableness. We agree with the Brannam Court that reasonableness is measured by looking at the marketplace, and we note that the market comparison approach is compatible with ordinary dictionary definitions of the term “reasonable,” which include logical, not exceeding the limit prescribed by reason, not excessive, moderate. Random House Webster’s College Dictionary (1997). The Brannam Court determined that $ 250 was a reasonable document preparation fee in west Michigan. Id. Paxson has failed to offer evidence to dispute that *36 $ 250 is reasonable in west Michigan for document preparation. [Cowles, supra at 233-235.][17]
Nonetheless, defendant urges this Court to adopt the view apparently espoused by the United States Court of Appeals for the Seventh Circuit in Guise v BWM Mortgage, LLC, 377 F3d 795, 800 (CA 7, 2004). According to defendant, Guise sets forth an “objective” test under *37 which a fee is bona fide as long as the services for which the fees are imposed are performed, period. We decline defendant’s invitation to adopt its reading of Guise because it is inconsistent with the meaning of “bona fide.” For example, if defendant charges $250 for its document preparation fee, but only $10 of that total fee represents actual document preparation services and the remainder represents, for example, overhead charges, the fee would not be “bona fide” within the meaning of the TILA. In other words, the fee would not be what it is claimed to be, so the fee would not be “bona fide,” authentic, or genuine. Accordingly, we reject defendant’s argument and affirm the Court of Appeals decision that summary disposition under MCR 2.116(0(10) would be inappropriate.
IV CONCLUSION
We hold that Cowles’s initial class-action complaint tolled the period of limitations under MCR 3.501(F) for Paxson’s TILA claim because Paxson’s claim arose out of the same factual and legal nexus as Cowles’s claim and defendant had notice of both the TILA claim and the number and generic identities of the potential plaintiffs. In light of this conclusion, we need not decide whether the amendment to the class-action complaint adding this claim related back to the date of the initial filing. Moreover, summary disposition under MCR 2.116(0(10) would be improper because a material question of fact exists concerning whether the document preparation fee was “bona fide.” Therefore, we affirm in part, vacate in part, and remand for further proceedings in the trial court consistent with this opinion.
Weaver, Kelly, and Markman, JJ., concurred with Cavanagh, J.

 15 USC 1605(a) provides:
Determination of finance charge.
(a) “Finance charge” defined. Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. The finance charge shall not include fees and *7 amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges. Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
(2) Service or carrying charge.
(3) Loan fee, finder’s fee, or similar charge.
(4) Fee for an investigation or credit report.
(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor’s default or other credit loss.
(6) Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed.

 12 CFR 226.4 provides in relevant part:
(c) Charges excluded from the finance charge. The following charges are not finance charges:
(7) Real-estate related fees. The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:
(i) Fees for title examination, abstract of title, title insurance, property survey, and similar proposes.
(ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.
(iii) Notary and credit report fees.
*8 (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.
(v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

 The order initially granting class certification defined the class as follows:
All persons who obtained a real estate loan [secured by a first mortgage] from Bank West covering real property located within the State of Michigan; who were charged and who paid and/or financed a “document preparation” fee in connection with the transaction; which fee was imposed by Bank West or its agents and was disclosed on Line 1105 of the HUD-1 (including HUD-1A) Settlement Statement; and which fee was paid to or otherwise inured to the benefit of Bank West; and/or which fee was not disclosed as a part of the Finance Charge in the Federal Truth-In-Lending Disclosures.

 15 USC 1640(e) provides in relevant part: “Any action Tinder this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.”

 The Court of Appeals also dismissed plaintiffs’ unauthorized practice of law claim. The Court of Appeals held this issue in abeyance pending this Court’s decision in Dressel v Ameribank, 468 Mich 557; 664 NW2d 151 (2003). In Dressel, we held that a hank does not engage in the unauthorized practice of law when it completes standard mortgage forms and charges a fee for this service. Thus, in light of Dressel, the Court of Appeals dismissed the unauthorized practice of law claim by an order.

 Remarkably, Justice Corrigan posits that “[t]he Court of Appeals opinion addressed only whether the relation-back doctrine applied to this case.” Post at 40. But the Court of Appeals addressed both tolling and relation back. Cowles, supra at 219-231. Further, Justice CORRIGAN argues that the Court of Appeals did not conclude that Paxson’s TILA claim was tolled. This is also incorrect because the Court of Appeals specifically concluded that the period of limitations was tolled with respect to Paxson’s TILA claim. After noting that plaintiffs’ unauthorized practice of law claims were dismissed by its prior order and concluding that summary disposition was proper on the MCPA claims, the Court of Appeals focused on Paxson’s TILA claim, noting:
Plaintiff Paxson next challenges the trial court’s grant of summary disposition to defendant on her TILA claim. Neither the Michigan Court of Appeals nor the Michigan Supreme Court has *15 decided whether the amendment of a class action complaint to add new theories of liability relates back to the filing of the initial complaint for purposes of computing the expiration of the period of limitations. Thus, whether Paxson’s TILA cause of action was barred by the period of limitations involves an issue of first impression....
The TILA claim was formally pleaded in Cowles’s second amended complaint, which was filed on February 16, 1999. Defendant argues that the statute of limitations for Paxson and all other class members was not tolled with respect to that claim on that date. When the second amended complaint was filed, more than one year had passed since Paxson’s TILA claim accrued on February 9, 1998. Therefore defendant argues that Paxson’s claim is barred by the statute of limitations. We disagree.
MCR 3.501(F)(1) provides that the statute of limitations is tolled with respect to all persons within the class described in the complaint on the commencement of an action asserting a class action. MCR 3.501(F)(2) delineates several circumstances in which the statute of limitation resumes running against class members, specifically, on the filing of a notice of the plaintiffs failure to move for class certification; twenty-eight days after notice of the entry, amendment, or revocation of an order of certification eliminating the person as a member of the class; entry of an order denying certification of the action as a class action; submission of an election to be excluded from the class; or final disposition of the action.
Paxson was a member of the original class described in the complaint on the commencement of Cowles’s original class action. The class was ultimately certified and none of the circumstances of MCR 3.501(F)(2) occurred that could have caused the period of limitations to resume running against Paxson or any other class members. Thus, we find that the statute of limitations was tolled with respect to Paxson. [Id. at 219-221 (emphasis added).]
Thus, we cannot agree with Justice Corrigan that the Court of Appeals was “not referring to Paxson’s TILA claim” because this was the only claim that the Court of Appeals was expressly addressing and all of the other claims were previously addressed. Post at 41 n 3. Further, in connection with its later relation-back analysis, the Court of Appeals again stated its conclusion that Paxson’s TILA claim was tolled, stating, “In reaching our conclusion, we reject the argument that the statute of *16 limitations never tolled on the TILA claims because the period of limitations expired before Cowles’s complaint was filed and, thus, she was never a valid class representative for that claim.” Id. at 230. Accordingly, there is little doubt that the Court of Appeals concluded that Paxson’s TILA claim was tolled.
Despite so concluding, the Court of Appeals nonetheless felt compelled to address whether amendments to the complaint related back to the date of the initial filing “when the statute of limitations was tolled." Id. at 221 (emphasis added). As we note later in this opinion, however, the class-action tolling doctrine and the relation back of amendments are conceptually different. And because we conclude that Paxson’s TILA claim was tolled, it is unnecessary in this particular case to decide whether amendments to the complaint related back to the date of the initial filing for purposes of Paxson’s TILA claim.
Moreover, we must note that the parties’ arguments in this case mainly focused on tolling. In fact, after the Court of Appeals entered judgment and this Court granted defendant’s application for leave to appeal, defendant raised the following issues on appeal:
1. Does the fifing of a class action lawsuit toll the statute of limitations for a class member’s individual claim, where that claim was not, and could not have been, asserted by the class representative?
2. Should Michigan follow the Truth in Lending Act’s plain language and purpose and use an objective test for determining whether a loan document charge is “bona fide” for purposes of the charge’s exclusion from a lender’s APR computation?
Indeed, defendant’s principal arguments focused on tolling. For example, defendant argued that the class-action tolling doctrine should not extend to Paxson’s claim because that claim was not and could not have been asserted by Cowles. Defendant further argued that the class-action tolling doctrine applies only if the class member’s own claims are identical to those of the representative. Accordingly, defendant’s arguments focused mainly on tolling, and it argued against extending the class-action tolling doctrine in this case. Only after defendant argued that tolling did not apply in this case did defendant argue that relation back was inapplicable. Specifically, defendant argued that the Court of Appeals erred when it relied on the relation back of amendments because such a rationale is inconsistent with and distinct from American Pipe. As *17 defendant argued in its brief, “In other words, the very case that MCR 3.501(F) codifies, American Pipe, makes clear that the relation-back principle is inapplicable here, because if the principle was available to class members, there would be no need for a tolling doctrine at all.”
Justice Corrigan appears well-versed in defendant’s relation-back argument and how it relates to defendant’s tolling argument, see post at 53-54, but unlike Justice Corrigan, we need not decide this issue in this particular case because we conclude that the class-action tolling doctrine applies. But we must observe that we are puzzled by Justice Corrigan’s assertions that the Court of Appeals addressed only the relation back of amendments and that we have mischaracterized the Court of Appeals decision. Simply stated, the Court of Appeals concluded that Paxson’s claim was not time-barred because her claim was tolled and the amendment related back to the initial class complaint for purposes of computing the period of limitations. Further, and as noted later in this opinion, we acknowledge that the Court of Appeals holding that Paxson’s TILA claim was improperly dismissed rested primarily on its conclusion that the relation-back doctrine applied to her claim. But because Paxson’s claim was tolled and, thus, not time-barred on the basis of tolling alone, it was unnecessary for the Court of Appeals to decide the relation-back issue, a point with which Justice Corrigan seemingly agrees. See post at 41 n 3 (“If the Court of Appeals had been referring to the tolling of Paxson’s TILA claim when contending that MCR 3.501(F) applied to Paxson, as suggested by the majority, it would not have needed to address whether the relation-back doctrine applied.”). Merely because the Court of Appeals unnecessarily addressed both issues does not mean that tolling was not addressed at all or that this Court should overreach and analyze the relation-back issue where tolling alone is dispositive.

 We must note, however, that some courts have taken a broader position than we are prepared to adopt today. See, e.g., Appleton Electric Co v Graves Truck Line, Inc, 635 F2d 603, 609 (CA 7, 1980) (“We are persuaded that implicit in the Supreme Court’s American Pipe decision was the Court’s determination that ‘effectuation of the purpose of litigative efficiency and economy,’ [which Rule 23 was designed to perform] transcends the policies of repose and certainty behind statutes of limitations.”) (citation omitted).

 We disagree with Justice Corrigan’s characterization of our interpretation of MCR 3.501(F) to bolster her argument that our interpretation would frustrate the purpose of statutes of limitation. First, we do not conclude that every unnamed class member may move to intervene at any time and add any different or peripheral claim. Rather, we conclude that tolling is permitted where the claim arises out of the same factual and legal nexus and the defendant has notice of both the claim being brought and the number and generic identities of the potential plaintiffs. Further, as explained earlier, the aim of statutes of limitations are not frustrated under such an interpretation or in this very case because the claim here is not so different or peripheral that tolling is not permitted and defendant had notice of it. In other words, in this particular case, Paxson’s TILA claim involves the “same evidence, memories, and witnesses as the subject matter” of the original class action and defendant had notice of “the number and generic identities of the potential plaintiffs.” Again, we believe that the aim of statutes of limitations is satisfied in this particular case. Additionally, we observe that the interpretation set forth today must be applied on a case-by-case basis because the relevant inquiry will almost always depend on the facts presented in a given case.

 Additionally, the United States Supreme Court noted in Johnson v Railway Express Agency, Inc, 421 US 454, 467 & n 14; 95 S Ct 1716; 44 L Ed 2d 295 (1975), that the identicalness of claims played a part in its decision in American Pipe. Accordingly, it could be argued that the Court may appear reluctant to extend the class-action tolling doctrine to litigation involving anything other than identical claims. But Johnson did not turn on the absence or presence of identical claims. See, e.g., Mt Hood Stages, Inc v Greyhound Corp, 616 F2d 394, 403 (CA 9, 1980) (“Johnson did not hold that an identical cause of action in both proceedings is prerequisite to tolling.”). Rather, Johnson shows that notice to the defendant is the central concern with regard to whether tolling occurs, not simply whether an identical claim is subsequently made. Thus, Johnson does not preclude tolling here because defendant had sufficient notice of Paxson’s TILA claim for purposes of MCR 3.501(F).

 Further, MCR 3.501(F) only requires the “assertion]” of a class action to trigger tolling. It provides that “[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.” (Emphasis added.) One “asserts” a class action by claiming the right to a class action. If, in the end, it turns out that one does not, in fact, have such a right, this does not mean that the class action was not “asserted.” Because a person only has to “assert” a class action to toll the period of limitations as to all class members, class members are not obligated to investigate whether the *25 person “asserting” it actually has the right to do so. That is, the class members should be able to fully rely on the “asserting” of the class action, without having to independently determine whether the person “asserting” it possesses standing, whether he has brought claims that are not time-barred, or whether he has set forth every single legal argument that could conceivably have been made.

 Notably, even though the claim in the first amended complaint was based on § 1638, Cowles stated in the amended complaint that “[t]he ‘Document Preparation’ fee assessed Plaintiff by Bank West exceeded the costs of preparing the ‘final legal papers’....”

12 The Court of Appeals majority in this case similarly observed:
In the conclusion of his dissent, Judge O’Connell indicates that he “would also hold that certification of a class only tolls the statute of limitations for claims that originally and properly received certification.” This proposition is not supported by citation to authority or by analogy to any authority, and it ignores the purposes of class litigation. If class members cannot rely on the named plaintiff to toll the period of limitations on their claims, *27 each class member will he required to separately bring all claims in his own name on the chance that the representative plaintiff will later be found to have an invalid claim and that the benefit of tolling will not apply. [Cowles, supra at 228 (citation omitted).]

 Additionally, we must observe that we are puzzled by Justice COKKIGAN’s assertion that “there is nothing to toll” in this case. Justice Corrigan maintains that Paxson’s TILA could not be tolled because Cowles’sTILA claim expired “before [Cowles] filed her complaint.” Post at 47. But such an assertion ignores the language of MCR 3.501(F)(1) and the fact that the initial class action complaint was filed before the period of limitations had expired on Paxson’s TILA claim and that Paxson was a person within the class described in the complaint. Accordingly, we believe that Justice Corrigan’s rationale concerning tolling starts from a faulty premise.

 Although Justice Corrigan makes this argument in connection with her analysis on the relation back of amendments, we will address her argument because it also pertains to tolling.

 The filing of a class-action complaint puts a defendant on notice “of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method the class members choose to enforce their rights upon denial of class certification." Crown, Cork & Seal, supra at 353 (emphasis added).

 It should not he obscured by our invocation in this opinion of various federal and state court precedents that, if we were to look at nothing else but MCR 3.501, we would reach the same conclusion. MCR 3.501(F) provides that “[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.” (Emphasis added.) The manifest purpose of this provision is to avoid the situation in which each class member must initiate his or her own individual lawsuit to preserve a cause of action. Thus, class members must be allowed to rely upon the "assertion” of a class action without having to independently determine that the person asserting it has a right to do so. Moreover, it can be logically concluded, as we do in this opinion, that neither a too-broad nor a too-narrow identity of claims can be required under this rule.

17 While not necessary to its ruling, the trial court similarly observed:
The fee seemingly is to defray overhead and costs associated with the entire underwriting process probably the small part of which is actually preparing the documents which are disclosed on 1105 of the — of the form used at closing. Again 1105, as indicated by [plaintiffs counsel], is a title line and the document or the fees are those associated with title and title documents. So it seems manifest, therefore, that whatever else it is, the fee is a lot more than a document preparation fee based on the testimony of the Bank officials and based on the Koessel memorandum and the history of the fee and how it works its way into Bank West doing a business.
Does that mean that the fee is not bona fide? Well, that’s the trick. It seems to me that the mere fact that documents are prepared as part of the process is not sufficient of and by itself to make the fee bona fide and bona fide, as [plaintiffs counsel] points out, under Michigan law means that it is exactly what is claimed.
It seems here that whatever else we can say about it — the fee in this case — is not exactly what it claimed. It is a document preparation fee plus an overhead and underwriting fee and a processing and application fee.
Under these circumstances, it seems to me, that standard assessment of what we’re looking at leads to the inevitable conclusion that the fee is not exactly what is claimed, it is more than that and, therefore, doesn’t pass muster under Michigan law as being bona fide.
To that extent, it seems to me, the plaintiffs have made out a case and established that the fee does not fulfill the requirements of the Truth-In-Lending Act because it doesn’t meet the bona fide test.